## White, v. White, et al.

(Decided October 29, 1912.)

### Appeal from Jefferson Circuit Court. (Chancery, First Division).

1. Wills—Construction.—Under a devise by a testatrix to her children "or unto such of them as survive me, for and during their natural lives, with remainder to the child or children of any of such as may leave issue upon their death, share and share alike," the interest of one child that dies does not pass to his surviving brothers, so that the survivors or survivor hold the entire life estate until the last one dies, but passes in remainder to the deceased child's child or children.

2. Wills—Construction — Intestacy — Presumption Against. — Under the well recognized rule of construction that where a will is susceptible of two constructions, the law will place on it that construction which disposes of the entire estate, considered in connection with the particularity with which the testatrix devised and bequeathed bonds and stocks, furniture, ornaments, etc., thus showing her intention to devise all of her property, a devise by testatrix of "any other land on Meadow Creek, County of Green, State of Kentucky, I die possessed of" includes a tract of land adjoining other tracts in which the testatrix has an interest, and lying near Meadow Creek, though separated from it by a narrow river.

3. Rents—Action for.—In an action to recover rents, held that the chancellor fixed the rental value an acre too high, in view of the fact that all of the land could not be cultivated from year to year,

and in view of the further fact that the rental so fixed was more than 100% increase over the rent as fixed by the parties themselves in a former lease.

M. A., D. A., and J. G. SACHS, and BENJAMIN H. SACHS for appellant.

J. W. S. CLEMENTS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiffs, William T. White, and Charles A. White and James Clark White, infants by their guardian, Charles L. Crush, and the Fidelity Trust Company, guardian for Daniel P. White, and Daniel P. White, charging that they and Richard A. White jointly owned several tracts of land constituting one farm and aggregating about 977 acres, and that Richard A. White had occupied the farm for several years without paying any rent therefor, brought this action against Richard A. White to recover rent. The defendant, Richard A. White, denied owing any rent, and pleaded that it was agreed between him and the plaintiffs that he was to occupy the farm in consideration. of his paying the taxes and keeping up the improvements thereon. He also pleaded a counterclaim for $5,000 for improvements which he claimed to have placed on the property, and which he alleges enhanced the vendible value of the farm to the extent of $5,000. On final hearing, the chancellor held that one dollar an acre, in addition to the taxes and improvements, was the fair rental value of the farm for the years in question. Thereupon he entered judgment in favor of plaintiffs for $571.82, with six per cent interest from January 1, 1905; for the same sum, with interest from January 1, 1906; for the same sum, with interest from January 1, 1907; for the same sum, with interest from January 1, 1908; for the same sum, with interest from January 1, 1909; for the same sum, with interest from January 1, 1910, and for the same sum, with interest from January 1, 1911. Defendant's counterclaim was dismissed. From the judgment so entered, defendant appeals.

While the land in controversy is under one enclosure, it consists of five different tracts, held under different titles. The largest, or the old White home place, contains 427 acres. This land formerly belonged to Daniel

P. White, who died April 1, 1890, leaving a will, by which he devised all of his property to his wife, Nancy F. White. Nancy F. White died testate a resident of Jefferson County in the year 1898.

Item two of her will is as follows:

"I hereby give, devise and bequeath unto my children, Irene E. White, D. P. White, W. P. White and R. A. White, or unto such of them as survive me, for and during their natural lives, with remainder to the child or children of any of such as may leave issue upon their death, share and share alike, a certain tract or parcel of land containing about 427 acres, lying and being in the county of Green, State of Kentucky, on Meadow Creek, and more particularly described as follows:" (Here follows description.)

The will contains the following codicil:

"As a codicil to my will as above written, I hereby give, devise and bequeath to my daughter, Irene E. White, her share in the 427 acres of land, being the Old White Homestead, and fully described by metes and bounds in my will above, to be hers absolutely and in fee simple for her sole and separate use, free from the rights of any husband she may at any time have."

Tract number two contains 200 acres, and is known as the "Bill White Place." This tract was formerly owned by Daniel P. White and Nancy F. White. On November 14, 1883, they conveyed this tract to their daughter, Irene E. White, for life, with remainder one-half to their son, Daniel P. White, Jr., and the other half to the plaintiff, W. P. White, and the defendant, Richard A. White.

Tract number three is known as the "Williams Tract," and contains 200 acres. This tract was devised by Daniel P. White to his wife, Nancy F. White. This property passed under the will of Nancy F. White to W. P. White, D. P. White Jr., Irene E. White and the defendant Richard A. White in fee simple, share and share alike.

Tract number four, located on the south side of Green River, opposite the old White home place, contains 110 acres, and is known as the "Durham Tract." This tract also passed under the will of Nancy F. White to W. P. White, D. P. White, Jr., Irene E. White and Richard A. White, in fee simple, share and share alike. Irene E. White died during the year 1904, leaving a will

which, after making numerous devises and bequests, contains the following provision:

"Any other land on Meadow Creek, County of Green, State of Kentucky, I die possessed of, I leave to my brother, Richard Aylette White, to revert back to my brother, W. P. White, if said R. A. White dies without issue."

Tract number five, consisting of about 40 acres was devised by Irene White to her nephews, the plaintiffs, Daniel P. White, Charles A. White and James Clark White with certain limitations which it will not be necessary to notice.

Daniel P. White, Jr., died in the year 1903, leaving a last will, by which he devised to his children, the plaintiffs, Daniel P. White, James Clark White and Charles A. White, all his right, title and interest in all of said lands, share and share alike.

There is no dispute as to the tenure of the "Bill White" place, the "Wiliams" place and the 40-acre tract. It is conceded that the Bill White tract of 200 acres belongs in fee to W. P. White, one-fourth, R. A. White, one-fourth, and Daniel P. White's children, Charles A. White, James Clark White and Daniel P. White, one-half. The Williams tract of 200 acres belongs to R. A. White, one-fourth in fee and one-fourth for life, W. P. White, one-fourth in fee, and Daniel P. White's children, one-fourth in fee. The title to the 40-acre tract is in Daniel P. White's children, or the survivor, and if they leave no issue, it passes to W. P. White and R. A. White.

There is a dispute as to the tenure of the home place and the Durham tract. It is the contention of counsel for defendant that Nancy F. White devised the home place to her three sons, W. P., D. P. and R. A. White, as a class, or co-parceners, to remain in them as long as any of them lived, and at the death of the last of the three to go to the child or children of all that left issue, per capita, share and share alike. The language of the will is: "I hereby give, devise and bequeath unto my children, Irene E. White, D. P. White, W. P. White and R. A. White, or unto such of them as survive me, for and during their natural lives, with remainder to the child or children of any such as may leave issue upon their death, share and share alike." The only circumstances tending to support the construction contended for by counsel for defendant is the location of the clause "share and share

alike," it being argued that this clause refers to the grandchildren of the testatrix, and not to her children, because it occurs in the will after the provision "with remainder to the child or children of·any such as may leave issue upon their death. The will, however, does not devise the land in question to the testatrix' children for life, and then to the surviving child for life, with remainder over, but devises the land to her children for and during their natural lives, with remainder to the child or children of any such as may leave issue upon their death. It is perfectly apparent from the language in question that the tsetatrix intended that her sons should take a life estate in the land devised, and upon the death of any one, his children should take his part, and the words "share and share alike," though separated from the clause making the devise to her sons for life, qualify the estate given to her sons and not that given in remainder to her grandchildren. This construction works equality, and it is apparent from the provision in question that this is what the testatrix intended. As this is the construction given by the chancellor, it follws that the judgment in this respect was proper.

It appears that the Durham tract was devised by Mrs. Nancy White to her four children in fee. The question we are now called upon to decide is whether or not Irene White's interest in this tract passed under her will. The chancellor held that it did not, but passed as·undevised estate. Her will contains the statement that she had already had as she wished the tract of land that lay on Meadow Creek, known as the Bill White place, disposed of at her death. She then devises, with certain limitations not necessary to be considered, the 40-acre tract which she had bought, and which adjoined the·Bill White place, to plaintiffs, Daniel P. White, Charles A. White and James Clark White, the children of her brother, Daniel P. White, Jr. She also devises to her brother, William P. White, the use of her home in Louisville for nine years, and then devises the home, share and share alike, to her two brothers, William P. White and Richard A. White and her three nephews, Daniel P., Charles A. and James Clark White, with certain limitations. In addition to this, she bequeaths her diamond, pearl and ruby rings, her bracelets, her silver pocket-book, her watch, her bonds and her bank stock, to certain persons, naming them.

The devise to Richard A. White, as set out above, is as follows:

"Any other land on Meadow Creek, County of Green, State of Kentucky, I die possessed of, I leave to my brother, Richard Aylette White, to revert back, etc."

The chancellor held that the Durham tract did not pass under this provision of Irene White's will, because it lay on the opposite side of the river from where Meadow Creek entered the river. It is a well recognized rule of construction that when a will is executed, it is the presumption that the testator intends to dispose of his whole estate, and does not intend to die intestate as to any part of his property, which presumption is overcome only where the intention of the testator to do otherwise is plain and unambiguous, or is necessarily implied. Thomas' Extx. v. Thomas' Guardian, 110 S. W., 853, 33 Ky. L. Rep., 700. Or, stated in another way, the court, in construing a will, will favor such a construction as will dispose of the entire estate, when it is apparent from the whole instrument that it was the testator's intention to dispose of his entire estate, and the presumption is against a construction resulting in partial intestacy. Newcomb v. Fidelity Trust Co., 108 S. W., 911, 33 Ky. L. Rep., 41. And where a will is susceptible of two constructions, the law will place upon it that construction which disposes of the entire estate. Howard v. Cole, 100 S. W., 225, 124 Ky., 812. Here the testatrix disposes of her real estate, her bonds and stocks, her jewelry, her furniture, bric-a-brac and ornaments, to various friends and relatives, and it is rare that one sees a will that specifies more minutely the different devises and bequests. The Durham tract adjoined other lands in which testatrix had an interest. Together they constituted one farm. While the Durham tract does not, in fact, touch Meadow Creek, it is located just a few yards from it, on the other side of a narrow river. She lived in Louisville, and evidently she regarded all of her lands in that vicinity as lying on Meadow Creek. To hold that she did not intend to devise the Durham tract would do violence to the well recognized rules of construction, as well as to defeath the plain intention of the testatrix to devise her entire estate. We therefore conclude that Irene White's interest in the Durham tract passed under her will to the defendant, Richard A. White, subject to the limitations

therein imposed. It follows that the chancellor's judgment in this respect is erroneous.

It remains to consider the judgment in respect to the rents. It appears that on November 9, 1898, Richard A. White leased from W. P. White, Irene White and D. P. White, Jr., the lands which they jointly owned in Green County. Richard A. White was to pay as rental therefor the sum of $300 a year to Irene White. The lease was for a period of three years, with the privilege of five years in the event that they agreed on a price for the remaining two years. After the execution of this lease, Irene White died, and D. P. White, Jr., died leaving three children, who are plaintiffs in this action. When plaintiffs brought this suit, defendant, Richard A. White, pleaded that he held the lands under an agreement merely to keep up the improvements, and pay the taxes. In other words, he repudiated the idea that he held over from year to year under the original lease. He now insists that as a matter of fact he did hold over under section 2295, Kentucky Statutes, and that the lease in question fixes the rents which he should be required to pay. Inasmuch, however, as he did not defend on the ground that he held under the original lease, he will not be permitted, after the case has been prepared for trial and submitted upon a different issue entirely, to insist that his rights should be governed by the original lease, when he never relied upon it, but pleaded an entirely different contract.

As to defendant's counterclaim for improvements and taxes, we find that the greater part of the improvements were made prior to the year 1904. It is the contention of the plaintiffs that he agreed to pay the $300 a year in addition to paying the taxes and keeping up the improvements. Their contention in this respect finds support in the fact that he regularly paid the annual rental of $300, without ever making any claim for taxes and improvements, until this action was brought. We conclude that plaintiffs are right. This eliminates defendant's counterclaim for taxes paid and improvements made prior to the year 1904.

Since 1904, defendant has paid taxes averaging about $60 or $— a year. He has also made improvements aggregating about seven or eight hundred dollars. The testimony of the witnesses bears upon the reasonable rental value of the land, in addition to the taxes and improvements. As usual, we find very conflicting and ex-

treme views upon this question. The chancellor found the reasonable rental value of the land to be $1.00 an acre, in addition to the taxes and improvements. The evidence shows that there were from 200 to 400 acres of tillable land. If this land was of a character that could be cultivated regularly, doubtless the rental value fixed by the chancellor would be about right. But such is not the case. Doubtless during several of the years in question, all of the land could not be cultivated. After considering all the evidence in the case, we conclude that $500 a year, in addition to the payment of the taxes and improvements, is a reasonable rental. In reaching this conclusion, we place great stress on the fact that in 1898 the parties themselves fixed the rent on a basis of $300 for three-fourths of the land, or $400 for the whole land, in addition to the taxes and improvements. $500 is only $100 more than this amount, or an increase of about 25 per cent. This, we think, more nearly corresponds to the actual increase in the rental value of the farm than the judgment of the chancellor, which is based on an increase of more than 100 per cent over the rental value fixed by the parties themselves.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.