## Dockery's Executors v. Dockery, et al. ·

(Decided May 16, 1916.)

## Appeal from Russell Circuit Court.

1.   Wills—Construction of—Valuation of Property by Testator—Expression of Opinion.—Where a testator devised "all of my four · farms on the Cumberland River in the Hereford Bottom in Russell County * * with the hill lands adjoining the .same. That is all the land that I own on the Cumberland River, to the value of fifteen thousand dollars," the devisees took all the land on the Cumberland River, although it was of more than the value of fifteen thousand dollars. The words fixing the value at fifteen thousand dollars were merely an expression of opinion as to the value of the land.

2.   Wills—Construction of—Substitution of Word.—It is a familiar rule in the construction of wills that a word may be substituted whenever it is necessary to do so in order to carry out what seems to be the plain intention of the testator.

3.   Wills—When Construed to Take Effect as if Executed Immediately Before Death of Testator.—Under section 4839 of the Kentucky Statutes a will will be construed to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention appears in the will.

4.   Wills—Disposition of Property Acquired by Testator After Execution of Will.—Where the testator, after the execution of the will, acquires property adjoining lands specifically devised, and that would have passed with the devise if it had been acquired before the execution of the will, the specific devise will include the land subsequently acquired, unless a contrary intention appears in the will.

5.   Wills—Construction of—After—Acquired Property.—In determining whether ·property acquired after the execution of the will passed under and in connection with specific devises, the whole will will be looked to for the purpose of ascertaining the intention of the testator.   ·

6.   Wills—Construction of—Dying Without Issue.—Where a will devised property directly to devisees without any intervening estate or period of ·distribution, and provided that at the death of the devisees the land should go to their legal heirs, and if any of them should die without issue his share to go to the other devisees, the devisees took a defeasible fee subject to be defeated at any time by their death without issue then living.

7.   Wills—Construction of—Equality of Distribution.—Where a testator gave land to some of the devisees and money to others, the devisees to whom the money was given should be allowed interest on it from the time the devisees who got the land were put in possession of it until the money is paid over by the executor, in

order to carry out the purpose of the testator to make an equal distribution of his estate.

JONES & GARNETT and JAMES GARNETT for appellant.

LILBURN PHELPS and R. . LLOYD for the children of Vincent Dockery.

J. R. GARNETT for H. M. Dockery.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming in part and reversing in part.

Simco Dockery died testate in Russell county in October, 1914. In his will, written in March, 1907, and probated after his death, he devised all of his estate, after making provision for the payment of debts and funeral expenses, to his brother H. M. Dockery, and the children of his brother, Vincent Dockery. The paragraph giving his estate to them reads as follows:

"I give and devise to my brother Vincent Dockery's heirs all of my four farms on Cumberland River in the Hereford Bottom in Russell county and State aforesaid, together with the hill lands adjoining the same. That is all the lands that I own on the Cumberland River, to the value of fifteen thousand dollars to be equally divided between them and at their death to their legal heirs, and if any of these should die without issue to go to the other heirs of said Vincent Dockery equally and alike and to their legal heirs as above set out. Provided, however, that they may only have the right to cut and use sufficient timber off of any of said lands above devised to make the necessary repairs about the farms and not sell or dispose of any of said timber in any other manner or form whatever. I will and bequeath to my brother, H. M. Dockery, fifteen thousand dollars in bank stocks and cash or cash notes, however, reserving five hundred dollars in bank stock as above provided for a fund forever to keep up my grave, etc., for his life time and after his death to his heirs, and the remainder of my estate both real and personal to be sold and the proceeds of same to be divided between my brother Vincent Dockery's heirs and my brother H. M. Dockery, as the law directs. And if my brother, H. M. Dockery, should be dead at the time of my death, then same shall go to his legal heirs."

There being some doubt in the minds of the executors as to the construction of this paragraph in the will, this suit was brought for the purpose of obtaining the advice of the chancellor.

One of the questions in the case is, did the children of Vincent Dockery take the whole of his land on the Cumberland River in the Hereford Bottom or only so much of it as was reasonably worth fifteen thousand dollars? Another question is, did these children take, under the clause giving to them all of the land owned by the testator on Cumberland River, the land on the Cumberland River bought by him after the execution of the will or did it become a part of the residuary estate? Another question is, did the children of Vincent Dockery take a fee simple title in the land devised to them or a title subject to be defeated at any time upon their death without issue? Another question relates to the payment of interest to H. M. Dockery on the fifteen thousand dollars devised to him.

The chancellor adjudged that the children of Vincent Dockery took all of the land owned by the testator at the time of his death that was located on the Cumberland River, including the land bought subsequent to the execution of the will. He further adjudged that the children of Vincent Dockery took only a defeasible title in this land, and that if any of them died without issue, then the share of the one dying should go to the survivor. His ruling on the subject of interest will be noticed when that branch of the case comes to be disposed of.

H. M. Dockery complains of so much of the judgment as gives to the children of Vincent Dockery the land purchased by the testator subsequent to the execution of his will, or any land of the value of more than fifteen thousand dollars. The children of Vincent Dockery complain of so much of the judgment as limits them to a defeasible fee, insisting that under the will they took a fee simple title.

(1) On the issue as to whether the children of Vincent Dockery took all the land owned by the testator on the Cumberland River or only so much of it as was of the value of fifteen thousand dollars, we think the chancellor correctly adjudged that they took all the land owned by the testator on the Cumberland River at the time of execution of the will. The language is, "I give

and devise to my brother Vincent Dockery's heirs all of my four farms on Cumberland River in the Hereford Bottom  *  *  *  together with the hill lands adjoining same.  That is all the lands that I own on the Cumberland River, to the value of fifteen thousand dollars.'' We think it was evidently the intention of the testator to give to these heirs all of this land, and that the words "to the value of fifteen thousand dollars" should be treated merely as an expression of his opinion of the value of the land at the time the will was executed.

It is true that in the petition of the executors, it is averred that at the time of the execution of this will, and when the testator died, this land was worth between twenty-five and thirty-thousand dollars, and doubtless by oversight this valuation was not denied by the heirs. But this allegation in the petition and the failure of the heirs to deny it in their pleading, should not be allowed to defeat what we conceive to be the intention of the testator.

If this devise should be limited to land of the value of fifteen thousand dollars, it would not embrace all the land he owned, when the will was executed, on the Cumberland River, or the four farms, and the manifest purpose of the testator to give to these heirs the four farms and all of the land he owned on the Cumberland River would be defeated.  The principal thought in his mind was that they should have all of the land he owned on the Cumberland River.  That is the leading and controlling idea in this portion of the will.  And it is reasonable to infer that at the time of the execution of the will the testator placed a valuation of fifteen thousand dollars on this land and intended that the children should have it at this valuation.

This construction is further strengthened by the fact that he gave to his brother, H. M. Dockery, fifteen thousand dollars in bank stock, cash or cash notes, showing, as we think, that he valued this land at fifteen thousand dollars and gave it to these heirs at this valuation in order to make them equal in the distribution of the estate with his brother, H. M. Dockery.  If he had intended to only give these children land to the value of fifteen thousand dollars, it seems reasonable to infer that in place of giving to them all of his land on the Cumberland River, he would have limited the devise to fifteen thousand dollars' worth of land or some equivalent expres-

sion showing his purpose that they should have land of the value of fifteen thousand dollars only.

It is furthermore clear that if the word "at" should be substituted for the word "to" in the clause "to the value of fifteen thousand dollars," so that it would read "at the value of fifteen thousand dollars," there could be no room for dispute as to the exact meaning of the testator; and it is a familiar rule in the construction of wills that a word may be substituted whenever it is necessary to do so in order to carry out what seems to be the plain intention of the testator. Moore v. Sleet, 113 Ky. 600; Shaver's Admr. v. Ewald's Exor., 142 Ky. 472.

(2) The next question is, did the heirs under this devise take the land purchased by the testator for $1,160.00 a few years after the execution of his will and owned by him at his death? It is admitted that this land lies on the Cumberland River and adjoins the four farms that were owned by the testator at the time of the execution of the will. And it is the contention of counsel for the heirs of Vincent Dockery that this land passed under the devise, and the chancellor so adjudged.

Section 4839 of the Kentucky Statutes reads: "A will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention shall appear by the will." So that unless the will shows that the testator did not intend that this subsequently acquired land should pass under the specific devise to these children, it would go to them under the statute which provides that a will shall speak and take effect as if it had been executed immediately before the death of the testator. In other words, unless a contrary intention appears in the will, it will be construed as if it were written immediately before the death of the testator, which in this case would of course be after he had acquired this land. Or as said in Flournoy v. Flournoy, 1 Bush. 515:

"If, from the will itself, it shall appear more reasonable to infer an intention that after-acquired land should pass by it than that it should remain undevised, then it would pass by the will; otherwise, if the contrary intention shall seem more reasonable, the land will descend. And if there be nothing in the will to lead to the one deduction rather than the other, land acquired by

the testator after its publication should descend as estate undevised.''

We, therefore, must look to the will for the purpose of ascertaining whether the testator intended to limit this specific devise to the quantity of land he owned at the time of the execution of the will.

When the testator came to execute his will he owned four farms on the Cumberland River located partly in the Hereford Bottom and partly on the hillside adjoining, and this is the specific land that he gave to and intended that the children of his brother should have. That he did not intend to give to them under this specific devise any land subsequently acquired, although it might be located in the Hereford Bottom and on the Cumberland River adjoining his four farms, is further shown by the fact that after making to them this specific devise, which he valued at fifteen thousand dollars and giving to his brother, H. M. Dockery, other estate of the value of fifteen thousand dollars, he provided that the remainder of his estate both real and personal should be sold and the proceeds divided equally between the heirs of his brother, Vincent, and his brother, H. M. Dockery. Thus showing very plainly, as we think, that it was the intention of the testator to give specifically equal shares of his estate to these two beneficiaries of his bounty and after they had received these two equal shares, whatever other estate he might have should likewise be equally divided between them. He did not intend to create any inequality between these classes, and if these children should be given the subsequently acquired land it would create an inequality not contemplated or intended by the testator.

(3) The other question is the character of estate the children of Vincent Dockery took in the land specifically devised to them. The will provides that at their death this land should go to their legal heirs, and if any of them should die without issue his share to go to the other heirs of said Vincent Dockery equally and alike. It further provides that these children should have only "the right to cut and use sufficient timber off of any of said land above devised to make the necessary repairs about the farm and not sell or dispose of any of said timber in any other manner or form whatever." These directions clearly show, as we think, that the testator intended that if any of the children of Vincent Dockery

should die at any time without issue, the share of the child so dying should go to the other children of Vincent Dockery, or to the children of any of them that were dead. The devise was direct from the testator to these children. There was no intervening estate or period of distribution. The property passed immediately upon the death of the testator to the devisees and the devise falls directly within the rule announced in Harvey v. Bell, 118 Ky. 512, that "where there is no intervening estate, and no other period to which the words 'dying without issue' can be reasonably referred, they are held, in the absence of something in the will evidencing a contrary intent, to create a defeasible fee which is defeated by the death of the devisee at any time without issue then living."

(4) The question of interest comes up in this way: H. M. Dockery was devised fifteen thousand dollars, which sum he elected to take in cash, and the lower court held that as the heirs of Vincent Dockery received on January first, 1915, the possession of the land devised to them, H. M. Dockery was entitled to receive the benefit of the fifteen thousand dollars devised to him from January first, 1915, and therefore the executors were directed to pay for his use and benefit interest on fifteen thousand dollars at the rate of six per cent per annum from January first, 1915, until such time as the principal sum should be paid over to him. It was necessary that this direction for the payment of interest should be made in order to carry out the intention of the testator to make H. M. Dockery equal with the children of Vincent Dockery. As the children of Vincent Dockery got their share of the estate on January first, 1915, and it was not then practicable to give H. M. Dockery his part of the estate which was in interest-bearing funds, it was proper that the executors should be directed to pay him the interest on the fifteen thousand dollars until such time as it was convenient for them to turn the principal sum over to him.

Wherefore, the judgment is affirmed, except in reference to the land acquired by the testator after the execution of his will. This land should be treated as a part of the residuary estate and disposed of as directed in the will.