## Phelps, et al. v. Stoner's Administrator, et al.

(Decided May 30, 1919.)

### Appeal from Montgomery Circuit Court.

1. Wills—Construction—Intention of Testator.—The cardinal rule in the interpretation of wills is to consider all the provisions of the will and to ascertain from the language employed the intention of the testator and to construe it so as to carry out that intention, provided it does not contravene any rule of public policy or is not contrary to any positive rule of law; and where there are codicils they are to be taken into consideration within this rule as forming parts of the will.

2. Wills—Construction—Intention of Testator.—Another rule of presumption is that the testator did not intend to die intestate as to any of his property, and if the will is susceptible of two constructions, one disposing of all of the property and the other not, the former construction will be preferred.

3. Wills—Construction—Exclusion.—A testator can not exclude one who would otherwise inherit by only declaring in his will that such one should not have any part of his property, since to effectuate that purpose the property must be disposed of, but such attempted exclusion may be considered in determining whether the testator intended to dispose of all of his property.

4. Wills—Limitation—Upon Absolute Estate.—While it is not competent for a testator to limit an absolute estate by attempting to dispose of what may remain of the devise after the death of the devisee, still it is competent for him to limit, in the same clause or in a subsequent one, what would otherwise be an absolute estate by disposing of the entire property, in the limiting clause, after the death of the devisee, since such limitation is not inconsistent with or repugnant to the estate attempted to be limited.

5. Wills—Construction.—A testatrix devised her farm to her six brothers and sisters and directed her executor to sell it for the purpose of division, but to prefer some member of her family in making the sale, and gave the right to her executor to occupy it.

for five years and in a codicil extended the right of occupancy throughout the life of her executor (who was her brother) if he so desired, with further directions for him to "leave it so some of my family can own it." Held, that the word "leave" in the quoted clause was not used in a testamentary sense, but in the sense of departing or going away from, and that by the use of the clause the testatrix intended that her brother, the executor, when he ceased to occupy the farm, either voluntarily or by his death, would leave it intact as a part of the estate of the deceased so it would be in condition to be purchased by some member of her family as she had provided in the original will.

ED. C. O'REAR, J. C. JONES and R. G. KERN for appellants.

CHARLES D. GRUBBS and ROBERT H. WINN for appellees.

Opinion of the Court by Judge Thomas—Affirming.

This suit was filed by the administrator with the will annexed of Mary F. Stoner and certain devisees for the purpose of obtaining a judicial construction of the will of the testatrix. Some of the devisees who did not join as plaintiffs were made defendants, as was also the appellants, Frank Phelps, Hugh Atkinson and Mary Lou Atkinson, all of whom are heirs at law of the testatrix but were not devised anything by her will or any of the codicils attached thereto. The court, by its judgment, construed the will and codicils so as to dispose of all of the property of the testatrix, and in a manner which deprived appellants of all interest therein, and complaining of that judgment they prosecute this appeal.

The will and codicils were written by the testatrix, and, as she says, "without consulting any one." The will, which is dated May 20, 1901, contains sixteen clauses, and there are three codicils, the first of which is dated March 20, 1906; the second is not dated, and the third bears date of August 14, 1906. The first eight clauses have nothing to do with this controversy. Specific devises and bequests are made in them, none of which is called in question. The ninth clause reads: "After these bequests are complied with, and my debts paid, the remainder of my estate I want equally divided between my brothers and sisters, namely: Lucy Atkinson, Sally Berry, Amanda Clay, Margaret Burgin, William T. and John S. Phelps." Immediately following, in the tenth clause, the testatrix says:

"The part of my estate bequeathed to my sister, Margaret Burgin, I want to be used for her comfort while she lives, and at her death what is left of it, to be equally divided between my sisters, Sally Berry and Amanda Clay, and my brother, William T. Phelps."

She made other limiting provisions in subsequent clauses of the original will with reference to the interests devised to her sisters, Amanda Clay and Sally Reppart, and in the first codicil, with reference to the part of her estate devised to her sister, Lucy Atkinson, she says: "At my sister, Lucy Atkinson's death, I want her daughter, Mary Lou, to have 1200 dollars of her estate, and the balance to be equally divided between the following named nieces and nephews, Sally, Margaret and Ann Clay, and William P. Oldham."

Further along in that codicil it is provided that:

"If my brother, William T. Phelps, and sister, Sally Berry, desire it, I want them to keep the farm and everything on it their lifetime. I bequeath it to them for that period, by requesting them to look after my sister, Amanda Clay, and her unmarried daughters. I leave everything in their hands, knowing they will decide everything with judgment and wisdom. I now revoke the gift of four hundred dollars bequeathed to my nephew, Frank Phelps, and bequeath the same to my nephew, William P. Oldham. It is my desire that Frank Phelps shall never have a dollar of my estate."

The second codicil has no bearing upon any questions involved, and the third and last codicil is in these words:

"I have made these changes without consulting any one. I want them strictly carried out, without any opposition. If my brother, William T. Phelps, desires it I want him to keep the farm, his and my sister Sally Berry's lifetime, and leave it so some of my family can own it. I have every confidence in him and know he will do what is just and right. I now set my name to this. This August 14th, 1906. Mary F. Stoner."

The original will named the two brothers, William T. and John S. Phelps, as executors, but before the death of the testatrix John S. Phelps died, and in the first codicil the coexecutor first named, William T. Phelps, is made sole executor. The fourteenth clause of the original will provides that:

"If any of my family want the farm on which I live, I want my executors, after consultation with my sisters, to fix a price on it, and sell and convey to the purchaser. If none of the family want it, I direct my executors to sell it, either publicly or privately, as they think best, and I hereby give them full power to convey it to the purchaser."

The chief points of controversy, and the storm center around which the legal battle revolves, grows out of the effect of the attempt in the first codicil to limit the estate given Lucy Atkinson by the ninth clause of the will, and the construction to be given the last codicil of date August 14, 1906. Appellants contend that by the last codicil the testatrix intended to and did revoke in its entirety the disposition made of her property in clause nine of the will and gave therein to her brother, W. T. Phelps, as his sole interest in her farm an estate for and during his lifetime and that of his sister, Sally Berry; that it revoked the life estate in the farm previously given to Sally Berry by the first codicil, and in addition that W. T. Phelps, in that codicil, was given the power to dispose of the farm or "leave it" to some member of the testatrix's family, and that since W. T. Phelps died after the death of the testatrix without making disposition of the farm, it passed as undevised property, and that appellants are entitled to their distributive share therein. The appellants, Hugh and Mary Lou Atkinson, further contend that if they should be mistaken as to the effect of the last codicil revoking the ninth clause of the will, then the attempted limitation in the first codicil of the share which Lucy Atkinson took under the ninth clause of the will is null and void, and that being the sole heirs of John W. Atkinson, a deceased son of Lucy Atkinson (the devisee), also deceased, they are entitled by inheritance to one-half of the interest devised to Lucy Atkinson in clause nine of the will. The judgment disallowed all of the contentions made by appellants, and we are called upon to determine whether that judgment is correct.

Before adverting to a consideration of the questions involved and the application of well known rules for the construction of wills, we deem it necessary to make a brief statement of the surroundings of the testatrix. The farm, which is practically all of the residue of the estate covered by clause nine of the will, and which is the

only property mentioned in the last codicil, was one upon which the testatrix resided, and it contained 371 acres. She was a widow without children, as was also her sister, Sally Berry; her brother, William T. Phelps, was a bachelor, and he and Sally Berry had for a long time resided with the testatrix upon her farm. They were very much attached to each other, as appears to have been true as between the testatrix and her other brothers and sisters. The will breathes throughout a fair and equitable desire on the part of the testatrix to deal justly with her living brothers and sisters and the children of those who were deceased. It also appears from express terms in the will that the testatrix had great confidence in her two brothers, William T. and John S. Phelps, and in her sister, Sally Berry. It further appears that it was the desire of the testatrix that when the farm should be sold for final distribution that some member of her family should be given preference as purchasers, provided any of them desired it, at the price to be agreed upon by the devisees. It is equally apparent that, inasmuch as the brother, W. T. Phelps, and the sister, Sally Berry, were both old and childless, the testatrix wished that they should continue to occupy as their home throughout their lives, if they so desired, the one in which they had long resided with her. With these preliminary statements we will as briefly as possible undertake to determine the true construction of the portions of the will and codicils in controversy.

Perhaps there is no rule of law more firmly established than the one requiring courts in construing wills, as well as other writings, to first determine the intention of the testator, or the one who executed the writing, and to give and apply that construction which accords with and carries out that intention, and in arriving at such intention all parts of the will and codicil or codicils must be looked to. In the recent case of Dickson v. Dickson, 180 Ky. 423, in stating the duty of the court in such cases, it was said: "Many rules prevail as aids to assist courts in construing wills. Chief among them, and indeed the one which surrenders to no other, is that the intention of the testator as gathered from the four corners of his will shall prevail."

In the case of Peynado's Devisees v. Peynado's Exr., 82 Ky. 5, in stating this governing rule of construction, this court said: "But when the language, whatever may be its purity or defects, expresses the intention of the tes-

tator in making a lawful disposition of his property, that intention will be the pole star to guide the court in interpreting the meaning of his words and construing the composition of his testament.''

Many other cases, both foreign and domestic, might be referred to, but it would render this opinion too long to do so, and we will content ourselves with citing only the following from this court: Citizens' Trust Co. v. Fidelity Trust Co., 136 Ky. 540; Whittaker v. Whittaker, 166 Ky. 632; Compton v. Moore, 167 Ky. 657; O'Rear v. Bogie, 157 Ky. 666; Patrick v. Patrick, 135 Ky. 307, and Trustees Presbyterian Church of Somerset v. Mize, 181 Ky. 567. In all the cases it is held, and in all the text books it is stated, that whenever the intention of the testator can be gathered from the language employed as contained within the four corners of the entire will and in all of its codicils, such intention must be applied, provided it does not conflict with any established public policy or is not otherwise prohibited by law. That codicils may be looked to in connection with the wills to which they are attached (in applying this rule) is equally well established, since they are parts of the will itself and must be construed as if the whole constituted one instrument. 40 Cyc. 1421, and Beall v. Cunningham, 3 B. Mon., 390.

The rule just discussed is an absolute one, and it imposes upon the courts an imperative duty, i. e., to give that construction to the will which will carry out the intention of the testator as shown by a consideration of the whole of it. A rule of presumption useful for the purpose of assisting the courts in determining the testator's intention is that it will not be presumed that a testator intended to die intestate as to any of his property. In other words, that it will be presumed that when a testator attempts to formulate and execute his will, which is a most solemn and important act, he intends to dispose of his entire property and not merely to change (from that provided by law in case of intestacy) the devolution of a small portion of it. Cases from this court applying that rule are Dickson v. Dickson, *supra;* Newcomb v. Fidelity Trust Co., 33 Ky. Lew Rep. 41; Thomas' Exr. v. Thomas' Gdn., *idem.* 700; Howard v. Cole, 124 Ky. 812, and many others to which reference might be made. Guided by these two leading rules we are convinced that there is no serious difficulty in ascertaining what the testator meant

and intended by the clauses of the will and the codicils involved.

Reading the ninth clause of the will in connection with the one in the first codicil limiting the estate of Lucy Atkinson, it is perfectly manifest that the intention of the testatrix was to limit the interest of Mrs. Atkinson to that of only a life estate. While it is not expressly stated, in either the will or the codicil containing the clause of limitation, that the estate is only for the life of Mrs. Atkinson, by implication such was the intention of the testatrix. The codicil does not attempt to dispose of any part of Mrs. Atkinson's portion given to her under the ninth clause "which may be left" at her death, but it attempts to and does dispose of all of it after her death, clearly showing that it was the intention of the testatrix that Mrs. Atkinson should enjoy it only during her life. The limitation would scarcely have been more definite or any clearer if it had been expressly stated that Mrs. Atkinson took only a "life interest."

Upon this point it is urged that the attempted limitation in the codicil is inconsistent with the absolute estate given to Mrs. Atkinson in the ninth clause of the will, and that under the doctrine of the cases of Clay v. Chenault, 108 Ky. 77; Dulaney v. Dulaney, 25 Ky. Law Rep. 1659; Beckner, et al. v. Roth, et al., 132 Ky. 429; Nelson v. Nelson, 140 Ky. 410; Ball v. Hancock, 82 Ky. 107; Mitchell v. Campbell, 94 Ky. 324; Pedigo's Exr. v. Botts, 28 Ky. Law Rep. 196; Comlth. v. Stoll's Admr., 132 Ky. 234 (on petition for rehearing); Trustees Presbyterian Church of Somerset v. Mize, *supra,* and others which could be cited, it is void, and that under the ninth clause of the will Mrs. Atkinson took an absolute estate in the portion of the property therein devised to her unaffected by the limitation attempted to be imposed in the first codicil. This would no doubt be true if the terms of the will creating the estate in Mrs. Atkinson were similar to those involved in the cases referred to. But, to our minds, they are entirely dissimilar. In each of those cases the wills involved, or the portions of them affecting the interests under consideration, conferred upon the devisee an absolute estate with full and unlimited powers of disposition, and the right to exercise such acts with reference to the property and of control and dominion over it as could be done only by an owner in fee simple. The attempted limitation in those cases which the court denied effect purport-

ed to operate only upon whatever portion of the property devised, if any, which the devisee might not himself dispose of. There was no attempt in any of the limiting clauses of the wills involved to curtail or restrict in any manner the right and power of the devisee to make such disposition of the property as he saw proper, and the court construed such provisions to manifest an intent on the part of the testator to create in the devisee an absolute estate; that it was not the intention of the testator to create any less than an absolute estate by attempting to dispose of any portion of the property undisposed of by the devisee. Thus in the Chenault case the testator provided in a codicil to his will, in which he had given an absolute estate to his son with "the right, privilege and power to convey his part of said land and make the purchaser a good title thereto," and if any of the proceeds arising from the sale should at the time of the death of the son without children be invested in other lands, then such lands should revert back to the estate of the testator, and it was held that such attempted limitation was inconsistent with the fee, and was therefore void.

In the Dulaney case, after having given the devisee an absolute estate, the will said: "If any one of my children should die and leave property belonging to me, one-half they can will to whom they please, if they have no legal heirs; the other one-half is to go to my living heirs." It was held that the attempted limitation was void because it purported to operate only upon property which the devisee might leave undisposed of at his death.

The same distinction is recognized in the other cases referred to, it being stated in the latest one, Trustees Presbyterian Church of Somerset v. Mize, thus: "That where property is devised to one absolutely, with the power of unlimited disposition of the property, and by an after clause of the will it is attempted to devise over *an undisposed of remainder* of the property, the limitation over is void." All the cases held that where a life estate only is given, with power of disposition, the limitation over will be upheld.

In the case before us the testatrix did not either expressly or impliedly confine the operation of the limitation in the first codicil of her will to any remainder of the property which might be left at the death of Mrs. Atkinson, or to any portion of it which she might not dispose of. On the contrary, the limitation expressly dis-

poses of the entire property after the death of Mrs. Atkinson. Such limitations have universally been upheld by this court upon the ground that to do otherwise would violate the plain and manifest intention of the testator. It results, therefore, that the portion of the judgment now under review can not and will not be disturbed.

This brings us to the second contention as to the effect of the last codicil, which attempts to deal only with the home farm of the testatrix, containing 371 acres, and which constituted the great bulk of her property. By the fourteenth clause of the will it was provided how that farm could be sold, but in the previous tenth clause William T. Phelps was given the privilege, if he desired it, to run and operate the farm for five years. At the time of the writing of the first codicil, five years after the date of the will, one of the brothers had died. This fact no doubt induced the testatrix to provide in the first codicil that her brother, William T. Phelps, and her sister, Sally Berry, if they desired it, might keep the farm and everything on it their lifetime, conditioned that they look after the sister of the testatrix, Amanda Clay, and her unmarried daughters. This was perhaps superinduced by the thought that the brother and sister, to whom the privilege of occupying the farm for their lifetime was given, were getting old, would soon die, and that the sale provided for by the fourteenth clause of the will would be postponed for only a short while, even if the right to occupy for life were exercised by the brother and sister. The same might be said with reference to the right of occupancy for life by W. T. Phelps under the last codicil.

Under it he could keep the farm during his and his sister Sally Berry's lifetime, *if he desired.*

If he did not desire to exercise that privilege, he was not compelled to do so, nor would there be any life estate or life right of occupancy in him if he saw proper to surrender it before his death. During the occupancy, however, the sale provided for would be postponed, or if made, would be subject to his right. Clearly it was the intention of the testatrix by this codicil to provide in unmistakable terms a home for her brother and sister so long as they desired to occupy it. This to our minds is perfectly manifest unless (as is contended) the clause: "and leave it so some of my family can own it," found in the last codicil, was intended to and did create in W. T. Phelps the power to dispose of the farm. If the clause did not

create such a power, then the codicil did no more than to make the foregoing provisions for the brother and possibly to defer the sale of the farm which the 14th clause of the will directed.

This brings us to a consideration of the effect to be given to the clause in question. If, as contended by appellants, its effect is to create such a power of disposition in W. T. Phelps we would have to conclude that the testatrix intended thereby to revoke the ninth clause of her will and leave the disposal of her property to such member or members of her family as her brother saw fit to bestow it.  If the power was not exercised (and it was not) then there would be an intestacy as to the bulk of testatrix's property, which, under the rule, *supra,* we are not to presume she intended.  But, may the clause, literally construed, be given the effect contended for?  It will be observed that it does not provide for W. T. Phelps' leaving the property *to* some member of her family, but only *"so* some member of my family can own it."  One of the definitions given to the word ''so'' in Webster's New International Dictionary is ''In this or that condition or state; as has been stated or suggested; as indicated or as implied, or as supposed to be known.''  The same authority defines the word ''leave'' as ''To withdraw one's self from; to go away from; to depart from, as to leave the house.''

In the instant case the testatrix knew that her brother and sister might not desire to keep or live upon the farm during their lives, and when they ceased using it they would ''leave'' or ''depart from'' it, at which time the privilege of occupancy which she had given them in her will would be exhausted and the farm would then be left ''so (in the condition or state) some of my family can own it.''  But own it how?  Clearly by purchasing it in the manner provided by the fourteenth clause of the will, which they could not do unless the farm was left by W. T. Phelps intact and as a part of the estate of the testatrix, for the farm could not be so purchased unless it was left (so) ''in that condition or state.''

We think it was the intention of the testatrix, by the execution of the codicil in question, to postpone the sale of the farm, as provided for in the fourteenth clause of her will, to such a time as her brother, W. T. Phelps, as her executor, saw proper to make it, when he would withdraw his desire to further occupy; but if he did not do so

in his lifetime, that it would then be left in condition so that some member of her family could own it by exercising their preferred right to purchase it given by the fourteenth clause of the will, and that she did not use the word "leave" in the clause of the last codicil in a testamentary sense so as to vest in her brother the power to dispose of the farm. This construction also carries out the expressed intention of the testatrix when she said in the first codicil to her will that "It is my desire that Frank Phelps shall never have a dollar of my estate," which intention would be defeated as to all property undisposed of by the will and codicil, since an heir can not be deprived of his inheritance by such expressions of exclusion alone. There must in addition be a disposition made of the property by the will, or one provided for therein. Phillips v. Phillips, 93 Ky. 498; Clarkson v. Clarkson, 8 Bush 658; Todd v. Gentry, 109 Ky. 704; Walters v. Neafus, 136 Ky. 756, and McIlvaine v. Robson, 161 Ky. 616.

The conclusion reached renders it unnecessary to consider the effect of the failure of W. T. Phelps to exercise the power (if he were given it).

Neither are we called upon to pass upon the validity of the sale of the farm which the administrator with the will annexed and Mrs. Berry made after the death of W. T. Phelps, or whether the exercise of the power of sale was properly or improperly made, since this is not a suit calling in question the .acts of the administrator in the discharge of his trust, but it is only one for the construction of the will of Mrs. Stoner. For the same reason we can not consider the silence of the judgment with reference to the interest which W. T. Phelps (who died childless and testate) is devised in clause ten of the will, wherein the estate of Mrs. Burgin is limited to her for life. This is not a suit to settle the estate of W. T. Phelps, and when the time is ripe for the disposition of his interest under the limiting clause, appellants may then be heard upon the point argued but not raised by the pleadings.

The judgment being in accord with the views herein expressed, it is affirmed.