## Shields, Executor v. Shields, et al.

(Decided October 3, 1919.)

## Appeal from Nelson Circuit Court.

1. Wills—Construction—Intention of Testator.—In the construction of wills the cardinal rule is to ascertain from the entire contents the intention of the testator and to construe it so as to carry out that intention.
2. Wills—Intention of Testator.—The "intention of the testator" referred to above is the one which he expressed by the language employed, and is not a secret or supposed intention not expressed.
3. Wills—Ambiguity—Construction.—When the language of a will is ambiguous and is equally susceptible of two constructions, one of which disposes of all of the testator's property, and the other would result in his dying either wholly or partially intestate, it will be presumed that he intended to dispose of all of his property, and the construction will be given which has that effect.
4. Wills—Intention of Testator.—Courts may, in an endeavor to arrive at the intention of the testator, transpose, insert or omit words or clauses so as to effectuate his undoubted intention; but before this can be done it must appear beyond reasonable doubt that the testator intended to express the meaning conveyed after the making of such transposition, insertion or omission.
5. Wills—Partnership Property—Intention of Testator.—Where a partner by his will directed that property actually owned by the partnership, but the title to which was held by himself alone, be sold and the proceeds applied to the discharge of a lien on another piece of partnership property, the title to which was held jointly, and then directed that the other partner should have his one-half interest in the property relieved of the lien and his one-half interest in the surplus of the proceeds. Held, that he did not intend thereby to devise to his surviving partner the testator's one-half interest in the entire partnership property.

JOHN A. FULTON, ERNEST M. FULTON and KELLY & KELLEY for appellant.

NAT. W. HALSTEAD and JOHN K. TODD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole question presented for determination by this appeal is the construction of the will of John W. Shields, who was a bachelor about sixty years of age when he died on March 16, 1918, a resident of Nelson county. The will, although not dated, is shown by the proof and is conceded to have been executed in the fall of 1908. The portions of the will involved, and which form the basis

of this litigation, are the first, second and third clauses, which read:

"First—I direct the land known as the McMakin and Hinkle land, containing about seven hundred and fifty (750) acres, to be sold.

"Second—I direct that all stock on hand at my death be sold and the proceeds from the above as well as my life insurance in two companies be applied in paying for the Neal farm, one-half of this farm to be the property of M. T. Shields.

"Third—I will and bequeath as he now has his interest one-half of the ninety acres known as the O. T. Shields land, and after the above is all done according to the above our debts all paid—then the balance left from the above M. T. Shields is to have one-half of it."

The fourth clause directed a sale of the place where the testator resided, and a division of its proceeds amongst his brothers and sisters, except that his brother, Robert S. Shields, should have as a part of the estate only the sum of $5.00.

The fifth clause charged testator's sister, Mrs. Ella Kolb, with the sum of $1,400.00 previously advanced to her, with interest from the date of the advancement, while the sixth clause appointed testator's brother, the appellant and plaintiff below, M. T. Shields, executor of his will.

The nominated executor qualified, and afterwards brought this suit against the collateral heirs of the testator for a settlement of his trust and for a construction of the first three clauses of the will, it being contended by plaintiff that by those clauses he was devised all of testator's one-half interest in the property therein mentioned, and he asked the court to so adjudge. The answer took issue with that contention and insisted that the testator died intestate as to his one-half of the property mentioned in the first three clauses of his will, and that he intended, and as a matter of fact did only declare in them, the interest which his brother, M. T. Shields, owned and was entitled to in the property therein mentioned. After extensive preparation the case was submitted and the court construed the will as contended for by defendants, but ordered and directed the property sold and the estate settled according to the construction placed on the will, and from that judgment plaintiff prosecutes this appeal.

To properly understand the case, as well as the conclusions which we have reached, it will be necessary to make a brief statement of the facts bearing upon the questions involved. Plaintiff, M. T. Shields, is married and has a family. He and his bachelor brother, the testator, formed a partnership in 1896, the business of which consisted in buying and cultivating land, dealing in and raising stock for the market, including the shipping and selling of mules and horses on the southern markets. The bank account of the partnership was always kept in the name of John W. Shields, and either of the brothers had the right to and did issue checks upon that account, signing them in the name of John W. Shields. The partnership before the testator's death acquired three valuable tracts of land, one of them being known as the Mc-Makin and Hinkle land, containing 750 acres, which is the one directed to be sold in the first clause of the will. The title to this farm was taken in the name of John W. Shields, but it is contended and proven beyond controversy that it was paid for with partnership funds and was actually partnership property, which fact is admitted by all parties. Another tract, known in this record as the O. T. Shields land, contained ninety acres, and is the one mentioned in clause three of the will, the deed to which was made jointly to the two partners. The third tract is what is known in this record as the Neal farm, mentioned in the second clause of the will, the title to which was held jointly by the two brothers. The last mentioned farm contained about three hundred acres and was purchased in 1906 for the consideration of $26,000.00, $9,000.00 of which was paid in cash and the balance on time; but the cash payment was borrowed from a bank, and neither it nor any part of the deferred payments was paid at the time of the execution of the will.

Prior to the execution of the will the testator had procured two policies of $2,000.00 each to be issued upon his life, which were made payable to his estate, but it is alleged and proven that in reality the partnership was the beneficiary in each of those policies, all the premiums on them having been paid with partnership funds.

After the purchase of the Neal farm the plaintiff, M. T. Shields, with his family moved upon it, but before doing so there was constructed, with partnership funds,

a commodious residence. The testator took his meals and spent most of his nights at his brother's home, in which he had a separate room.

For a considerable time prior to the execution of the will, and also at the time of his death, the testator owned in his individual capacity a farm, containing about 420 acres, which was located about three miles from the Neal farm. This was the old Shields place, and testator would visit it almost daily, sometimes remaining there at night during exceedingly busy seasons of the year, but it was operated for the benefit of the partnership as were the other three farms mentioned. Aside from his personal belongings in the way of clothing, etc., this farm was the only property the testator owned individually, and it is the one, according to the proof and the judgment of the court, that the testator, by the fourth clause of his will, directed to be sold. After the execution of the will and before the death of the testator, all of the McMakin and Hinkle farm except fifty acres was sold and the proceeds applied to the payment of the debt incurred in purchasing the Neal farm.

While there was a close intimacy between the brothers after the formation of their partnership in a business way, and great confidence manifested in each other, there is no greater affection shown by the testator for his partner brother than for some if not all of his sisters.

That portion of the judgment giving plaintiff one-half of the insurance policies, one-half of the remaining fifty acres of the McMakin and Hinkle farm, one-half of the bank account and all other property of the testator except the 420-acre farm is not questioned on this appeal by any one, so that the only task before us is to determine what the testator meant by the language which he employed in sections two and three of his will.

It is conceded by counsel for both sides, as indeed it must be, that the first and all-important rule for the guidance of courts in the construction of wills is to ascertain from its entire contents the intention of the testator, and to give to it that construction which conforms to and carries out that intention. This rule is so fundamental and of such universal observance as to need no reference to authorities for its support. But observation and experience have demonstrated that many times wills are couched in language more or less confusing, sometimes to such an extent as to constitute an almost

irreconcilable ambiguity, and thus create considerable difficulty in arriving at the true intention of the testator. To enable courts to solve such difficulties many auxiliary rules have been promulgated, among which is the one to the effect that it will be presumed that the testator intended to dispose of all of his property by his will, dying intestate as to none of it. American & English Ency. of Law, Vol. 30, page 67; Shouler on Wills, section 488; Howard v. Cole, 124 Ky. 812; White v. White, 150 Ky. 283, and Phelps v. Stoner's Admr., 184 Ky. 466. This rule is not an absolute one, but only one of construction or presumption to be applied when the language of the will is so uncertain as to be susceptible of two constructions, one resulting in testacy and the other in intestacy. Phelps v. Stoner, *supra,* and Walters v. Neafus, 136 Ky. 756. In the latter case this court, in stating the application to be made of the rule now under consideration and the weight to be given to it, said:

"The presumption against intestacy as to any part of the estate vanishes when the fact becomes apparent that some part of it was not disposed of. In no event can that presumption supply an omission to devise a parcel of the estate."

Another rule sometimes employed by the courts when the facts justify it in arriving at the intention of the testator is that one which permits transposition and supplying of words in order to express the manifest intention of the testator as gathered from the language which he employed. This rule, while it has a footing in the law, is rarely resorted to. Page on Wills, section 473; Second Williams on Executors, section 968; Aulick v. Wallace, 12 Bush 531; Moore's Admr. v. Sleet, 113 Ky. 600; Buschemeyer v. Klein, 139 Ky. 124; Dockery's Ex'r v. Dockery, 170 Ky. 194, and Struss v. Fidelity & Columbia Trust Company, et. al. 182 Ky. 106.

It is only when from the context of the will and the surroundings of the testator that it is made certain beyond reasonable doubt that the testator omitted the word or words supplied by the court or used words in a wrong connection that the rule now under consideration will be resorted to. The caution with which this rule is applied grows out of the fact that the intention of the testator, which the courts seek to adopt, is not his entertained though unexpressed intention, but it is the intention which he expressed by the words which he employed.

Wickersham v. Wickersham, 174 Ky. 604; Fowler v. Mercer's Exr., 170 Ky. 353, and Eichorn v. Morat, 175 Ky. 80. As expressed in the Wickersham and Eichorn cases, *supra*, it is incompetent to show by proof, or for the court to determine from the face of the will, "what the testator intended to say but did not, but it may be shown (or determined) what was intended by what he did say." To hold otherwise would practically dispense with all the solemn requirements of the law pertaining to the execution of wills, including the one that they shall be in writing. If an interpolation could be inserted in a will, either by extraneous proof or through the convictions of a court as gathered from the face of the will, contrary to a reasonable construction of its contents, all of the safeguards provided by law to enable a testator to dispose of his property according to his fixed purpose and intention (if not contrary to any positive rule of law) would be wholly distroyed. The courts, instead of construing wills, would manufacture them.

In the light of what has been said, what did the testator mean by clauses two and three of his will? By the first clause he directed the partnership farm of 750 acres, but to which he held the title in his name, to be sold, and by the second clause he directed all of the stock on hand to be sold and the proceeds "from the above," with those of his life insurance policies, to be applied in paying for the Neal farm, upon which he and his brother resided. There was no record evidence as to the joint ownership of the stock. The record evidence of the title to the McMakin and Hinkle land, to the bank account and to the insurance policies all showed that those properties belonged exclusively to the testator, although as a matter of fact, as we have seen, they were partnership property. "The proceeds from the above" included the value of the McMakin and Hinkle land, to which was to be added the insurance policies, and out of this fund, plus the proceeds of the stock, the Neal farm was to be paid for, and the testator adds—"One-half of this farm to be the property of M. T. Shields." He does not say that one-half of that farm was then, at that time, the property of M. T. Shields, although he knew that according to the deed they jointly owned it. But the fact was in his mind that the farm was wholly unpaid for, and he directed that this debt be discharged with proceeds arising from property the title to which was held exclusively

by him, and when that farm should be paid for with such proceeds one-half of it was to continue "to be the property of M. T. Shields." Clearly, the testator was seeking to protect his brother's half interest in that farm against any claim which might be made by his heirs after his death, growing out of the fact that the farm was paid for with property to which the testator held exclusive title. In other words, clause two recognizes that the proceeds arising from the sale of the property directed by the will to be sold, which on the surface testator appeared to be the sole owner, were, in fact, partnership proceeds in which M. T. Shields was entitled to one-half.

This construction of the second clause of the will is, according to our view, strengthened by the language employed in the third clause. A strict construction of that clause will show that the testator did not attempt to do anything therein except to declare that his brother was entitled to one-half of the proceeds of the insurance policies, and one-half of the proceeds of the property ordered to be sold if there were any left after paying for the Neal farm. He did not attempt in the third clause to dispose of any interest in the O. T. Shields land, for he expressly says that "he (M. T. Shields) now has his interest one-half of the ninety acres known as the O. T. Shields land," evidently meaning thereby that it was unnecessary for the testator to direct that his brother owned a one-half interest in that land, but it was necessary for him to direct, as he did in the second clause of his will, that his brother should own one-half of the Neal farm after being paid for as he directed and that his brother should have one-half of the balance of such proceeds after that debt was paid, as was done in the latter part of clause three of the will. To our minds it is perfectly apparent that what we have outlined is all that the testator intended or attempted to do in clauses two and three of his will.

We realize that this construction results in testator dying intestate as to his portion of the partnership property, but he had the right to make his will as he saw proper. For, as said in the case of Walters v. Neafus, *supra*:

"It must always be borne in mind that the intention of the testator to dispose of his entire estate is a rule of construction only, and not a warrant for disposition by the court; for, although the testator may have intended

to dispose of his whole estate, and although his intention must prevail where practicable and not unlawful, yet he must have done so by the terms of his will, construed as the language used reasonably justifies.''

While the language employed by the testator in the instant case is not as clear and concise as it might have been, we think that in the light of the facts and circumstances it is reasonably plain, in which case we are not authorized to construe the will so as to dispose of testator's entire property. Indeed it is not at all uncertain but that he intended to die intestate as to his partnership property and to make his will more in the nature of a settlement of the partnership than otherwise, for when he came to dispose of his individual property he did so in the manner provided by the law of descent and distribution, with the exception of disinheriting one of his brothers, and it would appear that he intended that his one-half of the partnership property should be distributed under that law. The trial court so held and we are convinced that it was proper.

The judgment is therefore affirmed.