## Dickson v. Dickson, Executor, et al.

(Decided May 7, 1918.)

## Appeal from Kenton Circuit Court.

1. Wills—Construction—Intention of Testator.—The cardinal rule in the interpretation of wills is to effectuate the intention of the testator, and this is to be arrived at by giving the words employed their usual and ordinary meaning as gathered from the entire will, considering it from its four corners, and if possible the will should be construed so as to apply to and include all of the testator's property rather than to render him intestate as to part of it.

2. Wills—Construction—Intention of Testator.—While it is the rule that a devise to a creditor will be presumed to be in satisfaction of the debt, such rule is not favored by the law, and where there are any provisions or circumstances indicating a contrary intention on the part of the testator, no such satisfaction will be adjudged. And where the will provides for the payment of debts, such clause will be deemed to include the debt to the devisee, which will not be satisfied by the devise.

3. Wills—Construction.—A devisee can not claim under the will and also adversely to it, and where a devise includes property of the testator, and also that of the devisee, if the devise is accepted the devisee may not complain because his property was disposed of by the will, for in such case he must elect to take the devise under the will or renounce it and insist upon his claim to his property wrongfully included in it.

4. Wills—Construction.—A testator devised to his wife for life his real estate, his household furnishings and effects. By a succeeding clause he devised "after the death of his wife" and "in remainder" his property to his children. Held, that the word

"effects" read in connection with the clause disposing of his property after his wife's death in remainder included other personal property of the testator besides household furnishings and gave to the wife a life interest in such other property.

B. F. MENEFEE and J. M. LASSING for appellant.

S. D. ROUSE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The principal question involved in this appeal is the proper construction of the will of S. L. Dickson, deceased. It arises in this way: The deceased and the appellant, who was plaintiff below, each being more than sixty years of age, were married in 1905. It was not the first venture for either of them. Plaintiff bore no children as the fruits of her first marriage, but the deceased was the father of five children by his first marriage, one of whom is the appellee, S. J. Dickson, who is the executor of his father's will.

At the time of the marriage the deceased was the owner of about sixteen acres of land, and immediately adjoining it was a tract of fifteen acres owned by the plaintiff, who is the appellant. In 1908 appellant and her husband conveyed her fifteen acres to S. J. Dickson, a son of the deceased, and the latter and his wife the next day conveyed it to the deceased, who with his wife continued to reside upon the two tracts as one body until April 6, 1914, when the husband died.

The consideration recited in each of the deeds conveying the fifteen acres of land owned by plaintiff was "one hundred ($100.00) dollars and other considerations . . . the receipt whereof is hereby acknowledged." Before his death the deceased duly executed his will, the material part of which is in these words:

"I, Simeon L. Dickson, being of sound and disposing mind and memory do hereby make and publish this my last will and testament.

"Item First: I direct that all my just debts be paid as soon after my death as possible.

"Item Second: I give, bequeath and devise to my beloved wife, Susan F. Dickson, all my household furnishings and effects, and also my farm at Fiskburg, Kenton county, Kentucky, for and during the term of her natural life.

"Item Third: After the death of my wife, I give, bequeath and devise to my children, S. J. Dickson, Mary B. Pelly and E. N. Dickson and the children of my deceased daughter, Millie F. Byrd, all of my estate in remainder of whatever kind or description and wheresoever situated, absolutely and in fee simple, it being my intention to leave to each of my children above named and the children of my deceased daughter an equal share in my estate in remainder."

This will was probated by the Kenton county court on April 20, 1914, and the named executor, S. J. Dickson, qualified and is now acting in that capacity, while the widow immediately took possession of the farm, the house thereon and its furnishings, and has continued to hold them. More than a year thereafter, and without any statutory renunciation of the will, she filed this suit against the executor, devisees and heirs of her deceased husband, claiming that the will properly construed so as to effectuate the intention of the testator gave to her for life not only the farm and household furnishings, but also the income from the net balance of other personal property owned by her husband, consisting principally of cash, notes and corporate stock in different corporations, amounting in the aggregate to $6,375.00.

She also sought to cancel the two deeds referred to on the ground that she was unduly influenced and overreached by her husband to execute the one to S. J. Dickson, and that it was done because of a fraudulent scheme entered into between the deceased and his son to enable the former to obtain title to that property, but if this could not be done that she be allowed to recover from the estate of her husband the sum of $1,200.00 which she alleged was the agreed price that she was to receive for her land, none of which had ever been paid her, and that the recited consideration was false and untrue. She further insisted upon the recovery as against her husband's estate of other items which she claimed her husband owed her for certain property belonging to her and which her husband had converted and appropriated to his own use.

The answer denied the averments of the petition, and in another paragraph pleaded that plaintiff had elected to take under the will of her husband, which she had not renounced, and that she was thereby estopped to insist upon a cancellation of the deeds to the fifteen

acres of land, and also to insist upon a recovery of the
$1,200.00, since it was claimed that an acceptance of the
provisions of the will operated as a satisfaction of that
debt, if it ever existed.

Appropriate pleadings made up the issues, and upon
submission the court dismissed the petition. Complain-
ing of that judgment, the widow prosecutes this appeal.

It might be well enough at the beginning to dispose
of the two contentions with reference to the cancella-
tion of the deeds and the widow's right to recover the
$1,200.00, since we have concluded that neither of them
can be upheld. It is a principle of law, so well settled
that it needs no fortification of adjudged cases, that a
devisee or legatee can not take under a will property
devised by it and at the same time assert in himself in-
dependent title to such property. The law imposes upon
him the duty to elect in the manner provided by law
whether he will accept the terms of the will or insist upon
his adverse title to the devised property. This principle
of law effectually disposes of plaintiff's contention grow-
ing out of the alleged fraudulent procurement of the
deeds referred to. But we are unable to agree with de-
fendants' claim that the devise to the widow operated
as a satisfaction of her claim for $1,200.00 as alleged con-
sideration for her land. The doctrine that a legacy sat-
isfies a debt owing to the devisee grows out of a presump-
tion that it was the intention of the testator to satisfy
the debt with the legacy. It is at best not a favorite doc-
trine of the law and slight circumstances showing a con-
trary intention on the part of the testator will be suf-
ficient to overcome the presumption. The governing rule
upon the subject is thus stated in 40 Cyc. 1885:

"The rule that a legacy given by a debtor to his cred-
itor equal to or exceeding the debt in amount is to be
deemed a satisfaction of the debt, although well estab-
lished, is regarded with great disfavor, and the courts
almost universally manifest a strong disinclination to en-
force it. Consequently very slight circumstances are
considered sufficient to take a case out of its operation.
Its operation, it has been said, will not be enlarged, and
will only be applied to cases that fall strictly within
it, and then only when a contrary presumption cannot be
drawn from the will.

"The rule is not to be applied in cases where the lan-
guage of the will excludes the inference that the testator

intended that the testamentary gift should go in satisfaction of the debt, as where the will expresses a particular purpose or motive for making the gift. No presumption arises that a legacy is given in satisfaction of a debt where the will contains a provision for the payment of debts,'' &c.

There are also other grounds for discarding the rule, among which are that a devise of property of a different nature from the debt will not be presumed as a satisfaction of it. This court in the two cases of Cloud & Wife v. Clinkinbeard, 8 B. Monroe 397, and Smith v. Park's Admr., 27 Ky. Law Rep., page 12, had under consideration this rule as to the presumed satisfaction of debts with legacies as well as the exceptions to its application, and in the first case said: ''There is also another reason why the presumption of satisfaction does not arise in this case. The testator in his will directs all his just debts to be paid; if then he owed to the plaintiff, Mrs. Cloud, a just debt, he virtually directed its payment, as well as the payment of the legacies to her.''

In the Smith case it was said: ''The will, in addition, contains an express devise for the payment of her (the testatrix's) debts, and this fact negatives the idea that the specific devise of $500.00 was intended as a payment, the rule being that where the testator in his will directs all his just debts to be paid, if then he owed to his devisee a just debt, he virtually directs its payment, as well as the payment of the legacy.'' See, also, Lisle v. Tribble, 92 Ky. 308.

However, the proof in this case is wholly insufficient to show either a promise to pay $1,200.00, or any other sum, nor is it sufficient to show that the consideration for the deed executed by the wife for whatever sum it may have been has not been paid. The only evidence upon either of these issues is the testimony of the officer who took the acknowledgment of the grantors in the deed, and he says that he saw no payments made to anyone at that time, which of course proves no material fact, even if the officer had seen the deed delivered, which he did not. We therefore conclude that the court was not in error in rejecting both of the claims growing out of the conveyance by plaintiff of her land.

This leaves for consideration only the construction of the will. Many rules prevail in the law as aids to assist courts in construing and interpreting .such docu-

ments. Chief among them, and indeed the one which surrenders to no other, is that the intention of the testator as gathered from the four corners of his will shall prevail. Cecil v. Cecil, 161 Ky. 419; Whittaker v. Whittaker's Admr., 166 Ky. 632; Compton v. Moore, 167 Ky. 657, and O'Rear v. Bogie, 157 Ky. 666. Other rules, although subordinate to the one mentioned, frequently applied by the courts so as to arrive at the intention of the testator are that he is presumed not to intend to die intestate as to any of his property, and that words are to be construed in their ordinary and usual acceptation unless from their context and circumstances and surroundings of the testator he employed them to convey a different meaning. These latter rules are of such universal application as that they will be accepted without being fortified by authorities.

With these rules in mind, let us briefly consider the will to see what property was intended by the testator to be devised to his widow, the appellant. It is her contention that she takes a life estate in all of his property, while appellees insist that she takes such estate in only the farm, in the "household furnishings" and household goods, giving to the word "effects" a meaning synonymous with goods and qualifying it by the adjective "household," as if the testator had said "all my household furnishings and (household) effects." The definition of the word "effects" as given by Mr. Webster in the 1916 edition of his new International Dictionary is: "Goods; movables; personal estate, as, "The people escaped from the town with their effects'—sometimes used to embrace real as well as personal property."

Practically this same definition is given in 40 Cyc. 1527, where it is said: "The word 'effects' in its primary and ordinary meaning includes only personal estate, goods, movables and chattel property. It denotes property in a more *extensive* sense than goods, and includes all kinds of personal property." The text then proceeds to say that in its broadest sense of property or wordly substance it may include real estate. In "Words & Phrases," second series, vol. 2, there is this definition: "The word 'effects' is of very general significance, and is equivalent at least to personal property." Gallager v. McKeague, 125 Wis. 116, 110 Amer. St. Rep. 821, and Page on Wills, section 478.

In the case of Humble v. Humble, 3 A. K. Marshall 123, this court had before it the construction of a will containing this clause: "I give and bequeath unto Hannah, my dearly beloved wife, and Uriah, my son, all my household goods, money and movable effects." The testator owned some slaves which were not specifically devised by his will, nor was there any clause in it broad enough to include them unless they were devised to the wife and son under the term, "movable effects." In a contest between the heirs of the testator and his two devisees, his wife and his son, concerning the ownership of the slaves, this court held that they were included by the term "movable effects," and passed under the will to the devisees named, saying:

"Slaves, in their nature, are movable; and although they might have been described with more precision by other expressions than 'movable effects,' yet when it is recollected that by that part of the will first cited, the testator has evinced a fixed design not to die intestate as to any part of his estate; and when it is also observed that the will contains no other bequest which can, upon the most enlarged and liberal rules of interpretation, apply to slaves, we can entertain no reasonable doubt but by the expression 'movable effects' the testator intended to dispose of his slaves. These expressions, it is true, may, in strict propriety, embrace other species of property; but as slaves are, in their nature, moveable, in furtherance of the marked design of the testator not to die intestate, we apprehend that by those expressions the slaves must be construed to have passed to the wife of the testator and his son, Uriah."

The testator in the instant case owned no real estate except that mentioned in his will, hence we are not concerned as to whether the word "effects" as used in his will includes real estate. From what has been said, however, it is patent that its ordinary and commonly understood definition in the law, as well as among the laity, is that it refers to and includes all kinds of personal property. So that if the testator used it in this sense it is sufficiently broad to include all of his other personal property besides his household furnishings.

In looking at the four corners of the will we must not pass by its third item, by which the testator devised "after the death of my (his) wife" to his children "all of my (his) estate *in remainder*," &c. No present interest

in any property was devised to such devisees, but the interest which they took in any of his property was postponed until "after the death of my wife"; and further, that they took none of his estate except one *"in remainder."* This, to our minds, evinces an intention on his part to give to his devisees other than his wife *a remainder interest,* only, in whatever property they took which they were not to become possessed of until after the death of his wife. In other words, that the interest which his children took was to be preceded by the particular estate of his wife in that *same property.* Any other interpretation would have allowed the testator to die intestate as to his property other than his farm and household furnishings, or at least intestate as to such property during the life of his wife, and such a construction would also confine the meaning of the word "effects" as being synonymous with "furnishings" and of no additional inclusive force. This would make the use of the word entirely surplusage. We do not think the testator used it in that sense, but on the contrary, when we look at the entire will and apply to it the rules of interpretation referred to, we are convinced that he intended to give to his wife a life estate in not only the farm and the household furnishings, but also in his other personal property of which he might die possessed.

The trial court having construed the will contrary to the views herein expressed, and denied to the widow the income from the fund of $6,375.00, it results that his judgment is erroneous and should be and it is reversed, with directions to enter a judgment in conformity with this opinion.