## Walton v. Jones.

(Decided October 29, 1926.)

.Appeal from Boone Circuit Court.

1. Wills.—To arrive at meaning of will, testator's intention must be ascertained from instrument as a whole.

2. Wills.—If will is explicit, and meaning of its language is not obscure, rules of construction cannot be employed.

3. Wills.—The real question in construing a will is, not what did testator mean or intend to say, but what is meant by what he said.

4. Wills.—Absolute devise of property to wife so long as she remained testator's widow held to express intention to devise her defeasible fee, subject to be defeated by her remarriage.

5. Wills.—Where words employed in will are unambiguous, their ordinary and usual meaning cannot be defeated by conjecture as to what testator possibly meant.

JOHN L. VEST for appellant.

B. H. RILEY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This appeal involves the proper construction of the will of T. J. Walton, deceased, whose death occurred in the year 1912 at his domicile in Boone county, Kentucky, and shortly thereafter, viz., March 12, 1912, the will was duly admitted to probate by the Boone county court. The testator was survived by his wife, the appellant, Eliza H. Walton, and several children, the names and number of whom do not appear in the record. Although but one clause of the will is before us for consideration, as the brevity of the instrument as a whole will admit of its insertion in the opinion without unduly extending the length of the latter, it is here copied therein in full:

"Burlington, Kentucky.

"I T. J. Walton being of sound mind and knowing the uncertainty of life, and desiring to make a proper disposition of my property, do make this my last will and testament.

### 1st

"I desire that all my just debts and funeral expenses be paid.

### 2nd

"I will and devise, absolutely, all of my property both real and personal to my wife, Eliza H. Walton, so long as she shall remain my widow.

3rd

"In the event that I should die before my mother, I will and devise all that should come to me from her dower and personal estate to my children, the same to be managed by the guardian of said children and given to each child, share and share alike, as each one shall reach the age of twenty-one years.

4th

"I nominate and appoint my wife, Eliza H. Walton, executrix of my estate without bond and ask the court to appoint her guardian of my children and that no bond be required of her. Witness my hand this December 11, 1911.

"T. J. WALTON."

The testator's widow, Eliza H. Walton, who since his death has been in possession and control of all the real estate left by him, and since the probate of his will, claimed to hold and own the same by fee simple title as devisee thereunder, on November 16, 1925, by a writing then executed and signed by the parties, sold and contracted to convey by deed of general warranty to the appellee, Melvin G. Jones, 430 acres of land devised her by the will of her deceased husband, which included all the real estate left by the latter, except 16 acres reserved by the widow. The purchase price named in the written contract as the consideration for the sale of the land was $12,000.00, to be paid by the appellee upon the delivery to him by appellant of a deed with covenant of general warranty, that would convey him the fee simple title to the land.

Later a deed, purporting to convey the appellee such a title to the land in accordance with the terms of the contract of sale, was executed and duly acknowledged by the appellant; but a tender thereof to the appellee was waived by the latter, who then informed her that he would not accept the deed or otherwise comply with the terms of the contract of sale, because after contracting for its purchase an investigation he caused to be made of her title to the land in question had resulted in the conclusion on the part of the attorney conducting it that she did not own and could not convey him the fee simple title thereto.

Following the refusal of the appellee to comply with the terms of the contract of sale, this action in equity was brought against him by the appellant in the Boone cir-

cuit court seeking to compel its specific performance by him. The petition, after setting out the derivation of her title to the land, the terms of the contract evidencing its sale to the appellee and making certified copies thereof and of the deed executed to the appellee in pursuance of its provisions, together with a certified copy of the will of T. J. Walton, deceased, exhibits and parts of the petition, alleged the appellee's repudiation of the contract of sale, his refusal to accept the deed conveying the land, executed to him by the appellant in pursuance of its terms, and that its acceptance would have invested him with the fee simple title to the land.

The answer of the appellee, which is also styled a counterclaim, admitted his purchase of the land described in the contract sought to be enforced by appellant upon the terms therein expressed, and, also, his refusal to perform the same or accept the deed purporting to convey him the title to the land executed by the appellant and filed with the petition, and averred his reason therefor previously stated in the opinion. The pleading, however, denied the ability of the appellant to convey him the fee simple title to the land, or that the deed referred to would, or could, have conveyed him such a title, and following these denials alleged that by the terms of the contract of sale the appellant agreed and obligated herself to convey him the fee simple title to the land therein described.

The answer and counterclaim also averred the appellee's readiness and ability to carry out the contract and pay the appellant the entire conscideration of $12,-000.00 for the land, less the unascertained balance of a debt owing by her to the People's Bank of Burlington and to secure the payment of which she executed to it a mortgage on the land he contracted to purchase of her, provided the court would judicially determine that the deed therefor from the appellant tendered with the petition would convey him such a title to the land as by the terms of the contract of sale she covenanted to convey.

In the prayer of the answer and counterclaim the court was asked to compel the appellant to convey the appellee the character of title required by the contract of sale made between them; but in the event of a judicial determination of her inability to do so, that the contract of sale be rescinded and the appellee given judgment against her for his costs expended in the action.

The appellant filed a general demurrer to the appellee's answer and counterclaim, which the court overruled; and, upon her declining to plead further, it by the judgment rendered dismissed her petition and awarded the appellee the recovery against her of his costs, which judgment resulted in the granting to her and her prosecution of the present appeal.

The only devise made the appellant by the will in question is contained in the second clause thereof; and as no other clause or provision of that instrument throws any light upon the meaning of the language employed in the second clause, the sole question we are called on to decide is, does she take thereunder a fee simple title to the real estate thereby devised her? For if so, it goes without saying that the deed executed by her to the appellee and tendered with her petition would, had it been accepted by the latter, have conveyed him such title to the land he contracted to purchase of her.

We agree with counsel for appellant as to the importance of adhering to the rule customarily applied by the courts in construing wills of doubtful meaning, which is, that in order to arrive at the meaning of the will, the intention of the testator must be ascertained from a careful reading and consideration of the instrument as a whole. If, however, it is explicit and the meaning of its language is involved in no obscurity, rules of construction meant to elucidate, to which the courts are often compelled to resort, can not be employed. And in all cases involving the construction of a will, the court performing that duty should keep in mind the admonition contained in the following excerpt from the opinion in Howard v. Cole, 124 Ky. 816, later quoted with approval in the opinion of Fowler v. Mitchell, 170 Ky. 253, and, also, that of Wright v. Singleton, 190 Ky. 659:

> "The real question in each case is not what did the testator mean or intend to say, but what is meant by what he said? Courts may frequently be of the opinion that he did not intend to say what he did say, but they are not thereby authorized to give to the will any construction other than that which is justified by a fair interpretation of the wording and the language of the will itself."

It is argued by counsel for the appellant, 1st, that by his use in the first and second lines of the clause of the will in question of the words: "I will and devise, abso-

lutely, all of my property both real and personal to my wife, Eliza H. Walton," the testator intended to, and did, devise her the fee simple title to the whole of the real estate left by him; and that by his use in the same clause immediately after the name of the wife, and as a part of the same sentence, unpreceded by punctuation, of the additional words: "As long as she remains my widow," the testator did not intend to limit or qualify the fee devised her by the preceding language of the clause, but, if so intended, such attempted limitation or qualification was and is void. 2nd. That though the devise to the widow be declared to withhold from her the fee simple title to the real estate left by the testator, it nevertheless confers upon her such power of disposition as enabled her to sell the land and convey the fee thereto.

We regard each of these contentions untenable. The first is based on a line of cases, only in part cited in the brief of counsel, which substantially hold that where property is devised absolutely, with the power of unlimited disposition, and by a subsequent part of the will the testator undertakes to devise over the undisposed of remainder, the limitation is void. Becker, etc. v. Roth, 132 Ky. 429; Nelson, etc. v. Nelson's Extr., 140 Ky. 410; Roby v. Herr, 194 Ky. 622; Craig v. Radelman, 199 Ky. 501. Several of the cases also state a subsidiary rule which is, that where a life estate only is devised, with power of disposition, a limitation over as to such of the devised property as shall remain undisposed of at the death of the life tenant is valid. But an examination of those cases will show that they do not support the contention first urged by the appellant's counsel; and, also, that they are not in conflict with the cases later referred to in the opinion as sustaining the conclusion we have reached respecting the character of the title acquired by the appellant to the real estate devised her by the second clause of her husband's will.

The only case cited by appellant's counsel in support of his second contention is that of Roby v. Herr, *supra*. In that case the will of Hugh S. Herr by the first clause devised his personal estate after the payment of his just debts and funeral expenses to his wife and daughter, one-half to each. By the second clause he devised to his wife all of that portion of the real estate which he acquired under the will of his brother, Samuel T. Herr, and might own at the time of his death and also an undivided one-

half interest in any other real estate that he might own at the time of his death, "to be held and owned by my said wife, Eleanor H. Herr, so long as she remains my widow, and to be disposed of as she may see fit; but should she. marry again then the real estate devised to her under this clause of my will shall pass to and become the property of my daughter, Marian Herr, to be held by her under the same terms and conditions as are hereinafter set out in this will."

The right of the widow to convey a fee simple title to a part of the real estate devised her by the will of her husband was questioned by Roby, following his purchase of it from her, in an action brought by the widow to compel his performance of the contract. And it was adjudged by the circuit court that she could legally convey him such title; whereupon Roby took an appeal from that judgment to the Court of Appeals, which resulted in an affirmance of the judgment by the latter court, in doing which we, in the opinion, among other things, said:

"In arriving at the meaning of the language 'to be held and owned by my said wife, Eleanor H. Herr, so long as she remains my widow, and to be disposed of as she may see fit,' it is not necessary that it be considered with the view to determining whether they were intended to give to the wife the fee simple title to the estate devised as these words are usually understood and applied. It will be sufficient if the terms employed in the devise, though withholding from the wife the fee simple title, give her such power of disposition as will enable her to convey the fee; and fairly construed the words, 'to be disposed of as she may see fit,' contained in the will of her husband, are broad enough in meaning to confer upon appellee the power of disposition that will enable her to convey to another the fee simple title to the real estate devised her by the will, though by its terms her marriage before disposing of it would have deprived her of such power. By Webster the words 'to dispose of' are defined to mean: 'To sell; alienate; as, the man has disposed of his house and removed.' To say that appellee was not given by the words 'to be disposed of as she may see fit,' the power to sell and convey the appellant the fee simple title to the real estate described in the deed tendered him, would not only restrict the natural and universally accepted

meaning of those words, but also defeat, in large part, the intention of the testator.

"We find no fault with the construction given the will by the judgment of the chancellor, viz., that the appellee took under it a life estate in the property devised to her, determinable upon her marriage or death, and, in addition, that she was given by it the power of disposition, in the exercise of which she may sell and convey the fee to any of the real estate devised her, she being the sole judge of the necessity of such sale as she may make of it. This case seems to belong to that class of which, in Woodward v. Anderson, 145 Ky. 134, it is said: 'Where a life estate only is devised, with power of disposition, then the limitation over of such of the devised property as should remain undisposed of at the death (or marriage, as in the instant case) of the life tenant is valid.'" Kleber v. Kleber, 24 R. 7.

The devise made the appellant by the will under construction in the instant case is wholly unlike that to the wife contained in the Herr will, in that it does not confer upon the testator's wife, as does that of the Herr will, the power to dispose of the real estate or any part thereof given her. There is also this marked dissimilarity in the two wills, the Herr will contains a subsequent clause devising over to the testator's daughter such part of the estate given the wife as might not have been disposed of by her before a remarriage, or at her death, whereas no such provision appears in the Walton will.

In view of the points of difference in the two wills mentioned, it is patent that the opinion in Roby v. Herr, *supra*, can have no controlling effect in determining the meaning of the devise made the appellant by the will of her husband presented for construction in the instant case. The construction of the will urged by the appellant in this case would give no meaning whatever to and, in fact, ignore the words "as long as she remains my widow," and make the character of the devise determinable upon the meaning that her counsel insists should be given the preceding word "absolutely," which would violate the universally recognized rule of construction that requires the court in arriving at the meaning of the will to ascertain the intention of the testator from the contents of the instrument as a whole.

In this case all that is said in the will concerning the devise to the testator's widow is found in the second clause, which consists of a single paragraph and single sentence composed of two lines; and there is nothing in the language of the clause as a whole that requires any greater emphasis or force to be given the word "absolute" appearing in the first line, than to the words "as long as she shall remain my widow," appearing in the second line, and we must presume that the latter words were employed by the testator to fully express his intention to provide for his wife in the manner explained in the clause as a whole. In other words, the language of the clause as a whole clearly expresses the intention of the testator to devise her a defeasible fee in and to the real estate therein described; that is, the fee subject to be defeated by her remarriage.

In Ewering v. Ewering, Extr., 199 Ky. 450, we declared:

"The former rule that an absolute fee cannot be limited by a subsequent clause is no longer followed, since the will is not complete until all of it be written and duly executed, so that, if a testator inserts a clause qualifying an absolute gift and thereby manifests his purpose not to devise an absolute estate by the first clause, his intention should be given effect."

And certainly such intention should not be held less effective because expressed in the clause making the devise, instead of in a subsequent clause of the will.

Where the words employed in a will are not ambiguous, their ordinary and usual meaning cannot be defeated by mere conjecture as to what the testator possibly meant by employing them; and this rule, we think, sustains the correctness of the conclusion to which we have been brought by our consideration of the will involved in this case. Moreover, we are confirmed in that conclusion by the opinion in Mann v. Freeze, et al., 203 Ky. 739, a recently decided case. Manifestly, the appellant can convey to the appellee only such title to the land described in the pleadings as she took under the second clause of her husband's will, that is, a defeasible fee subject to be defeated at any time by her remarriage. Therefore, in approval of the holding of the chancellor, the judgment is affirmed.