## Davis v. Bennett's Ex'x et al.

(Decided March 18, 1938.)

KENNETH H. TUGGLE for appellant.

J. D. TUGGLE for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On December 13, 1925, Samuel Bennett died testate, a resident of Bell county, Ky. He died childless leaving surviving him only his wife, S. E. Bennett. At the time of his death, he was the owner of a half interest in a substantial acreage of Knox county land, mainly valuable for its coal and timber.

We conceive the question primarily presented in this case is what character of estate in this coal land, here involved, was devised to S. E. Bennett, by this will of her husband, which is as follows:

"First: I desire that all my just debts, funeral and testamentary expenses, be paid by my executrix of this my last will and testament, as soon after my death as may conveniently be done.

"Second: I give, devise and bequeath to my beloved wife, S. E. Bennett, all the rest, residue and remainder of my property, real, personal and mixed, and wherever the same may be situated, to be hers and subject to her use and for her benefit, so long as she shall remain a widow, after my death, and until she shall remarry.

"Third: In the event that my said wife, S. E. Bennett, shall marry again, after my death, then it is my will that upon her said marriage, the second clause of this my last will and testament, shall become null and void, and of no effect, and instead of the said S. E. Bennett having all of my said property, real, personal and mixed, and wherever situated, she shall be paid the sum of two hundred dollars per month out of the income from my estate for the rest of her life, or if the income from same should be insufficient at any time to pay her the said sum of two hundred dollars per month, then a sufficient amount of my said property, real, personal or mixed, as my executrix may deem best, shall be sold to pay said amount of two hundred dollars per month to the said S. E. Bennett.

"Fourth: In the event of the re-marriage of the said S. E. Bennett, after my death, thereby nullifying the second clause hereof and bringing into force the third clause hereof, I give, bequeath and devise all of my property, real, personal and mixed, and wherever situated, to the brothers and sisters of the testator and the brothers and sisters of my beloved wife, S. E. Bennett, and to the children of deceased brothers and sisters of testator and the said S. E. Bennett as follows:

"The said brothers and sisters shall all share alike and the children of any deceased brother or sister shall take the share that would have gone to said brother or sister if living, and this shall be, the same whether the said brother or sister of testator or the said S. E. Bennett be now dead or shall die hereafter; the intent being that the parent's portion shall descend to his or her children if he or she be dead at the death of testator, leaving child or children. But before any property of any kind is distributed among the said brothers and sisters of testator, or the said S. E. Bennett, or the child or

children of any such brother or sister who may be deceased, there shall be realized from my estate a sum of money to be invested in standard bonds or securities, sufficient to insure to the said S. E. Bennett the payment of the said sum of two hundred dollars per month for the rest of her life, and the surplus estate over and above the sum to be invested in such bonds or securities shall be distributed according to the tenor of this clause of this will, as soon after the marriage of said S. E. Bennett as may conveniently be done; and the said sum of money to be invested in said bonds or securities, or any sum of money realized upon said bonds or securities, or the said bonds or securities themselves, shall be distributed under the terms of this clause of my will as soon as may conveniently be done after the death of the said S. E. Bennett.

"Fifth: I appoint, designate and constitute my beloved wife, S. E. Bennett, to be my sole executrix of this my last will and testament and I ask that she be permitted to act without the execution of any bond."

This will, of date November 11, 1915, was duly probated and the testator's widow, S. E. Bennett, permitted to qualify as executrix of testator's estate, without being required to execute bond.

The widow, S. E. Bennett, having thereupon (both individually as devisee and as executrix under her husband's will) taken over the possession and control of the property left by him, has, it appears, with a view to both a profitable and timely realization of the coal value of this Knox county Bennett land, entered into a tentative coal lease of it with the Kentucky-Jellico Mining Company, upon a 10 cent per ton royalty basis for the coal mined by it.

The proposed lessee, it appears, acquired a coal lease on a large boundary of land, adjoining and practically surrounding this Bennett land, including the other one-half interest therein not owned by the Bennett estate, upon which it has constructed a large coal mining operation, which now extends up to the line of the Bennett land.

By reason of this situation, Mrs. Bennett urges that it is of timely importance in order to realize the

fair worth and value of the coal to now lease this estate land to the Kentucky-Jellico Mining Company before it finishes its mining operations adjoining it because of the inaccessible location of these estate lands except to the Kentucky-Jellico Mining Company, and the excessive cost of newly establishing a mining operation thereon; that it would be difficult to afterwards lease the land upon as advantageous terms to another as now offered by the Kentucky-Jellico Mining Company, proposing to now lease it, while engaged in mining its adjoining leased lands.

Under such circumstances, the executrix has brought this action for a construction and declaration of her right alleged given under the will to execute the proposed lease so as to bind said estate by its terms, with the right to collect the rents and royalties therefrom and to hold same in the way set out in the will, to all of which the defendants, named as beneficiaries in the fourth clause of the will, object, and by answer deny she was vested with such right and authority, under the will, to execute the proposed lease.

Upon submission of the cause, the trial court, construing the will, found that:

"Samuel Bennett, by his last will, undertook to and did dispose of his entire estate, and that his widow, S. E. Bennett, took said estate, subject to be defeated only by her remarriage, and that the powers granted by said will to said executrix are sufficient to authorize the execution of the proposed lease. * * *"

And so finding, adjudged that:

"S. E. Bennett, as the widow of Samuel Bennett, deceased, and as executrix of the estate * * * has the legal right to execute the proposed lease to the Kentucky-Jellico Coal Company * * * and the court approves and confirms the terms and conditions set out in the said lease contract."

Further, the court adjudged that:

"S. E. Bennett * * * is authorized to receive, as executrix of said estate, the rents and royalties received from said lease contract, and same shall be assets of said estate, and the Kentucky-Jellico Coal Company is authorized to pay said rents and royal-

ties to the said S. E. Bennett," which she will receive "as executrix of said estate, under the power granted to her by said will, and will account to said estate, as executrix, for all such sums received by her."

The appellant, John W. Davis, a defendant below and brother of the executrix and named as a contingent beneficiary under the will, has appealed, challenging the propriety of this judgment and, by this issue joined, presents for our consideration the sole question of whether or not the executrix has, by reason of the estate devised her, the power and authority under the will to execute the proposed lease and whether the court may authorize and approve the making of such lease, which is denied by appellant.

It may be here observed that, while appellant challenges the authority of S. E. Bennett, whether acting individually as devisee under the will, or as executrix of the Bennett estate, to execute the lease in question so as to bind the estate, he, by brief of counsel, yet concedes that "it is granted that the widow under the second clause of the will took the entire estate of the testator, subject to be defeated only upon the contingent happening of her remarriage," and further states that "it is conceded that the terms of the lease are fair and reasonable."

Notwithstanding such concessions made, we feel we are nonetheless required to consider and construe the provisions of the will, in respect to the character of the estate thereby devised testator's widow and executrix, S. E. Bennett, for a proper determination of this sole question here presented as to whether she was devised such an estate as gives her authority to execute the proposed lease so as to thereby bind the estate.

The will before us for construction is that of a man well advanced in years, who upon his death in December, 1925, was leaving his wife, S. E. Bennett, as his closest if not only dependent and who was as such the natural object of his affection and bounty, no children having been born to their marriage.

Under these conditions his will was written, wherein, when devising his wife a qualified estate in his property as sole devisee, no unnatural exclusion or failure of the promptings of natural affection to provide for chil-

dren could have occurred, but on the contrary, it would appear that the testator, under such circumstances, very naturally intended and purposed, by the language employed in his will, to give the property accumulated during the long years of their mutual effort and companionship to his wife, for her sole use and enjoyment, or, as by him stated in the devise made her by clause 2, next after directing payment of his debts, that there should go "to my beloved wife, S. E. Bennett, all the rest, residue and remainder of my property, real, personal and mixed, and wherever the same may be situated, to be hers and subject to her use and for her benefit, so long as she shall remain a widow after my death, and until she shall remarry."

The lower court in constructing this devise held that, under the will, "the testator disposed of his entire estate and his widow took said estate, subject to be defeated only by her remarriage, or, that is to say, a defeasible fee, which would ripen by her death without remarriage into an absolute fee."

After a very careful and mature consideration given all the provisions of the will containing these alternate clauses (which may be found to shed some light upon the intent of the testator, or as to the character of the estate meant by these qualifying conditions to be given his wife), it is our conclusion that the trial court properly construed the estate devised his widow thereunder as a fee, subject to defeasance upon the event of her remarriage.

It must not be overlooked that the sole purpose of construing a will is to thereby ascertain the intention of the testator as disclosed by the entire instrument, and that to arrive at the meaning of a will the testator's intention must be found and if needs be ferreted out by considering together all the provisions of the instrument. Dickson v. Dickson, 180 Ky. 423, 202 S. W. 891, L. R. A. 1918F, 765. A further rule of construction, looking to the end of ascertaining the testator's intent, is the presumption that the testator intends when making his will to dispose of his whole estate, and does not intend to die intestate as to any part of his property, and which presumption against partial intestacy is only overcome where the language of the will clearly indicates to the contrary. Walton Bank & Trust Company v. Carpenter, 205 Ky. 629, 266 S. W. 358; Thomas v.

Thomas, 220 Ky. 101, 294 S. W. 776; Corn v. Roach, 225 Ky. 725, 9 S. W. (2d) 1074.

Guided by and applying these rules of construction, in our determination of the question presented, it is appropriate that we should now consider the further provisions of the will, for the purpose of ascertaining from them what light they may throw upon the meaning and intent of the testator in their chosen use, as expressing his purpose to make a qualified or contingent devise to his widow of his entire estate as set out in clause 2 of the will, when considered in connection with its other clauses.

It is to be noted that testator, by the following clause 3 of his will, provides that, in the event his wife should marry again, after his death, it was then his will that this second clause of his will should become null and void and that his widow, instead of having all of his property, real, personal and mixed as thereby devised her, in lieu thereof should be paid the sum of $200 per month out of the income of his estate for the rest of her life, and, by clause 4 of his will, further directed that, in such case, i. e., in the event of the remarriage of his wife, thereby nullifying the second clause of his will and bringing into effect the third clause thereof, he bequeathed and devised all of his property "to all of the testator's brothers and sisters and the brothers and sisters of his beloved wife, S. E. Bennett, and the children of the deceased brothers and sisters of the testator and of his wife, the said named brothers and sisters to all share alike and the children of both testator's and his widow's deceased brothers and sisters to take the share that would have gone to said brothers and sisters if living," and further provided as set out supra, that "before any property of any kind is distributed among the said brothers and sisters of testator or the said S. E. Bennett * * * there shall be realized from my estate a sum of money to be invested in standard bonds or securities, sufficient to insure to the said S. E. Bennett the payment of * * * two hundred dollars per month for the rest of her life, and the surplus estate over and above the sum to be invested in such bonds or securities shall be distributed according to the tenor of this clause (clause 4) of the will, as soon after the marriage of said S. E. Bennett as may conveniently be done; and the said sum of money to be invested in said bonds or securities or any sum of money realized upon said bonds

or securities, or the said bonds or securities themselves, shall be distributed under the terms of this clause of my will as soon as may conveniently be done after the death of the said S. E. Bennett."

These provisions of testator's will, as set out in the paragraphs 3 and 4 of the will, it is our conclusion, after very carefully considering them in connection with clause 2, very obviously manifest and evidence the testator's intention to devise to his wife, the natural object of his affection and bounty, a fee title in all his property, subject to defeasance by her remarrying. The will names no other restriction on her remarrying, except that, in case she does, he provides by the third clause of his will that the second clause thereof, giving her such defeasible fee estate, shall become null and void, with the proviso that, in lieu of her then taking an absolute estate in his property, she shall receive only a life annuity therein, and further providing that in such event the fee estate given her of all his property by clause 2 shall be defeated by her remarriage, with a gift or limitation over of the property (excepting only the life annuity given) to the brothers and sisters, etc., of testator and his widow.

It would thus appear, from a consideration of these three clauses of the will together, as required by the generally recognized rule of construction, supra, that the intention of the testator is to be ascertained from the contents of his will when considered as a whole, that the testator's intent, as same may be gathered from the whole will, was clearly to give to his widow an absolute estate in his property, subject to defeasance upon the event of her remarriage.

This construction of the will is further we deem the proper one, in view of the fact that no intestacy can arise when construed as vesting the widow with a defeasible fee, rather than a qualified life estate.

This is manifest from the fact that the will makes no limitation or gift over of the estate given his wife, other than the one directed upon the event of her remarriage.

From this it follows that should the will be construed as vesting the wife only with a qualified life estate and she should not remarry, so as to bring into effect the limitation over of the property made only in the event of her remarriage, it would result that the tes-

tator would in such case be held to have died intestate as to the remainder of his estate upon the widow's death without marriage.

This result is to be avoided according to the established rules of construction stated supra, where this presumption against the testator's intent to die intestate is not overcome by a contrary intention plainly expressed or necessarily implied.

Further, we conceive that the inference reasonably deduced from the language of the will supra, is that while testator was entirely willing and desired, by reason of his affection for and confidence in his wife, to trust her, so long as she remained his widow and held the property devised her under her sole management and control, when uninfluenced by the selfish interest and counsel of a second husband, to make at the time of her death a rightful and proper distribution of the remainder of the estate equally between both his and her own brothers and sisters, he yet thought it proper, as indicated by the direction given in clause 4 of his will, to protect against the miscarriage of his desired distribution of his estate should she be subjected to the claims and adverse influence of a second husband, who would not be so considerate and mindful of their just and rightful claims to the property.

In numerous like cases have we, when guided by such considerations and applying these long approved rules of construction in determining what was the extent and the character of estate intended to be devised the wife where described as given for the period of her widowhood, with a limitation over upon the condition of her remarriage, held that she thereby took a defeasible fee in the estate of her husband.

Such was the question presented in the case of Hinkle v. Hinkle, 168 Ky. 286, 181 S. W. 1116, where the testator devised his wife certain property, "to be hers to hold, use and control and to be responsible to no one for her management as long as she shall remain my widow. Should she desire to marry again before such marriage I want my estate as it shall then be found to be regularly administered under the laws of Kentucky by a competent appointee of the court." We there held that the wife took a defeasible fee, subject to be defeated by her remarriage and converted into a life estate in one-third of the real property, the court saying:

"It is clear that the testator intended, in case plaintiff married again, to adopt, and did adopt, the statute of descent and distribution as part of his will. In the event of her remarriage, therefore, she will take only a life estate in one-third of the real property. In view of the language employed, and of the fact that there is no limitation over unless plaintiff marries again, we conclude that she takes a defeasible fee, subject to be defeated by her marriage and converted into a life estate in one-third of the real property."

We likewise so construed the provisions of the will considered in the case of Riner v. Fallis, 176 Ky. 575, 195 S. W. 1102, where the testator devised all his property to his wife, with the provision that in case she remarries "she is to receive a child's part." By this devise, with limitation over, we held that the widow took a defeasible fee in the real estate and could not make an absolute conveyance without the concurrence of the children.

And again did we consider and determine the like question of what was the proper construction of a devise, with limitation over, presented in the case of Prindible v. Prindible, 186 Ky. 280, 216 S. W. 583, where the language of the will was:

"I, the undersigned, having complete confidence and that she was largely instrumental in accumulating the entire amount of my estate, do hereby bequeath to my wife * * * all of my personal and real property, feeling confident that she will make a fair allowance to my daughter, Hazel A. Prindible, * * * and properly provide for Loretto Hager Prindible, my daughter, and John Prindible, my son, both the latter children by her.

"I make no restriction on her remarrying except in case she does she shall at once make proper provision for my children."

The court, in determining the character of estate given by the testator to his wife by this language of his will, said:

"The testator clearly intended that his wife should have an absolute estate if she remained unmarried, but if she remarried, she should make proper provision for the testator's children. In other words,

he gave her an absolute estate in his property subject to be defeated to the extent of a proper provision for his children in case she remarried.''

And again was this question reviewed and so determined in the case of Walton v. Jones, 216 Ky. 289, 287 S. W. 710, 713, where the construction of the language of the will was involved for determining the character of estate thereby given the wife.

By the second clause of his will, testator willed and devised all of his property both real and personal to his wife, so long as she should remain his widow.

We held that "the language of the clause as a whole clearly expresses the intention of the testator to devise her a defeasible fee in and to the real estate therein described; that is, the fee subject to be defeated by her remarriage.''

And again was the question of what character of estate was devised a surviving wife considered by us in Hutter v. Crawford, 225 Ky. 215, 7 S. W. (2d) 1043, 1044. There the surviving wife was devised by testator his property with the limitation over that, if she should marry again, "It is my will that said property above named or whatever else it may be changed into shall be at once so divided that two thirds thereof shall go to and be equally divided amongst my children then living so that they shall share equally.'' The lower court held that the widow under such a devise took a fee simple in one-third of the estate and a defeasible fee in the other two-thirds, subject to defeasance on her remarriage, which defeasible fee had ripened by her death without remarriage into an absolute fee.

The appellant, contending that the surviving wife took only a life estate, appealed.

Upon a review of the question presented as to what character of estate was devised the widow by the will, we said:

"In the case of Prindible v. Prindible, 186 Ky. 280, 216 S. W. 583, the testator devised his estate to his wife in these words:

" 'I * * * do hereby bequeath to my wife * * * all my personal and real property, feeling confident that she will make a fair allowance to my daughter, Hazel, * * * and properly provide for Loretto * * * my daughter, and John * * * my son. * * *

" ' I make no restriction on her remarrying except in case she does she shall at once make proper provision for my children.'

"We held that this devise created a defeasible fee in the wife of the testator, subject to being defeated to the extent of having to make proper provision for the children of the testator in the event of her remarriage.

"The present case cannot be distinguished from the Prindible Case, unless, as appellant urges, the second clause of the will, which purports to vest in the wife of the testator a power of sale, indicates that the testator intended her to take only a life estate coupled with a power of sale. However, taking the will as a whole, it is patent that the testator intended his wife to take an absolute estate in the land subject to defeasance of two-thirds thereof in the event of her remarriage. * * *

"Mrs. Hutter, then, taking a fee in the property subject to a defeasance as to two-thirds thereof in the event of her remarriage, and she having died without ever remarrying it results that the condition of defeasance can no longer obtain, and the lower court did not err in holding that on her death without remarrying her estate had ripened into an absolute fee."

Upon the authority of what we conceive is the rationale or salient and determining principle of these decisions wherein we have considered and construed the language of wills similar to that here involved, we are led to conclude that the testator should be taken to have here meant and intended, by the language used not alone in clause 2 but in the three clauses of his will, when considered together as hereinabove discussed, to devise a fee in all of his property, of whatever character and wherever situated, to his wife, subject to defeasance upon the contingency of her remarriage, which was the only restriction or condition named in the will upon which the estate was given over to the brothers and sisters, or their descendants, of the testator and his widow alike.

The testator's natural wish and will, as clearly evidenced in this instrument, was that his widow should not remarry and while nonetheless giving her an annu-

ity should she remarry, he, by his will, further provided that, in the event she should so do, her remarriage would be effective to at once terminate the estate devised her by clause 2 of the will, with a gift over of the estate (subject to the life annuity given her) to his and his wife's brothers and sisters, etc., as provided by paragraph 4.

However, this being the only restriction or condition named upon which there was made a devise over of the property given her by clause 2 of the will, and no limitation over of the estate whatever named in the will in the event the widow should not remarry, it would result that, if the said devise made the wife by clause 2 were construed to give only a qualified life estate, the widow would be given by the devise a smaller interest in the testator's estate when complying with his wish that she should not remarry than she would take in the event of her remarriage, under clause 4 of the will, which provides that in such event her brothers and sisters are to share in the remainder interest equally with his own.

Clearly a construction of the will as a qualified life estate, resulting in such an anomolous situation and one wherein intestacy may arise as to the remainder of his estate upon the event of his wife's dying without remarriage, as desired by him, is not to be accepted as reasonable and was an eventuality clearly not intended by the testator, but rather must we conclude his intention was, in order to avoid such a result arising, to vest his surviving wife with a defeasible fee to the property, which would ripen, upon her death without remarriage, into an absolute fee. This construction of the will avoids both the contingency of partial intestacy and a potential penalizing of the widow for respecting testator's wishes against her remarriage.

Having reached this conclusion, it is unnecessary to discuss further the right of the widow to execute the lease in question, as the devisee of a fee title to the land, desired to be leased, subject to defeasance only upon the event of her remarriage.

However, as devisee was devised only a defeasible fee title to testator's estate, including the mining land here involved, the court should have properly required her to execute a bond, conditioned to make proper ac-

counting of all rents and royalties she might receive under the proposed lease, in the event of her remarriage, but the same need not be here discussed, in that no such question is raised or discussed upon the appeal.

Therefore, the judgment is affirmed. Whole court sitting.

Thomas, Justice, dissenting.

In expressing the reasons for my dissent I shall do so briefly—contenting myself with stating fundamental rules and which are acknowledged by attorneys for both sides to the litigation, as well as by the court in the majority opinion, and I will in some instances attempt to fortify them with adjudged cases or authoritative texts—which course I have adopted for the sake of brevity. My disagreement with the majority opinion is confined to the interpretation it gives to the will of Samuel Bennett, whereby it is held that his surviving widow was devised a defeasible fee-simple title to the property involved, instead of construing his very plain and unambiguous language so as to vest in her, according to my conception, in no event an estate in excess of one for her life, subject to be curtailed (not defeated) by her remarriage. I am not so sure as to whether the opinion correctly approved the proposed mineral lease to be given upon the land involved. That question is shrouded in some doubt, but I have determined not to take issue with the majority upon it and shall, therefore, confine this dissent exclusively to what I conceive to be the single error indicated.

In volume I, second edition of Tiffany on Real Property, page 79, the text says: "In spite of the modern statutes dispensing with words of inheritance and creating a presumption of an intention to give an estate in fee simple, a gift to one until marriage, or during widowhood, ordinarily receives the same construction as at common law, as being intended to create a life estate only, determinable on marriage." In note 46 to that text there are cited in support of it cases from the highest courts of California, Illinois, Iowa, Kentucky, Maine, Massachusetts, Mississippi, Nebraska, New Jersey, North Carolina, Pennsylvania, South Carolina, and Texas. The case from Kentucky is that of Morgan v. Christian, 142 Ky. 14, 133 S. W. 982. The will in that case said: "I will my wife Sarah B. Tanner, 64½ acres

more or less of land, the home farm, and I also will Sarah B. Tanner 87 acres more or less. * * * She also can hold this entire property or depts this is my will so long as she remains my widow, and if she marries, the lower tract of land will be equal divided between the boys and Lizzie Tanner home farm." The piece of land last referred to in that excerpt is clearly and indisputably the 64½ acres that he devised to his wife in the first sentence of that clause of his will, which is the first one. The language filling the place of the asterisks disposes of other land and property and has no bearing at all upon the question at issue, i. e., the character of estate that the widow took in and to the 64½ acres of land devised to her "so long as she remains my widow," with an immediately following proviso that when she ceases to be his widow that tract of land will be equally divided between the boys and Lizzie Tanner. We held that she took only a defeasible life estate which ceased and became forfeited upon her remarriage, at which time she ceased to be the testator's widow within the definition of that term as applicable to the measurement of duration of estates held "during widowhood," regardless of the power that might be exercised by the widow while continuing to occupy that status.

Therefore, the surplus language contained in the second clause of Mr. Bennett's will, whereby all of his property of every kind and description was intended to be embraced therein, and whereby he said "to be hers and subject to her use and for her benefit, so long as she shall remain a widow, after my death, and until she shall remarry," is descriptive only of the character and extent of use to which his widow *as life tenant* may appropriate and employ the property during widowhood. But it will be observed that no power of sale is therein contained, and in enumerating the uses—or rather in describing the boundaries and limits thereof—he did no more than what the law would have attached by clear implication in the absence of such words.

In the case of Napier and Wife v. Davis, 7 J. J. Marsh. 283, the testator gave property to his wife "during her widowhood." He then went on to make other provisions upon the contingency of her remarriage, etc., and Judge Robertson, in writing for the court construing the will, said: "The will was not drawn with as much precision as is always desirable and important

in such cases; and therefore the intention of the testator may be somewhat doubted. But taking the first clause of the will by itself and construing it according to the letter—the punctuation, the rules of grammar and of common sense, it should be interpreted, we think, as limiting her entire interest to her life or widowhood. The whole will, taken together, does not change the import of the isolated devise to the widow. There is nothing in any other part of the will which is inconsistent with our construction of that clause, or which tends to establish any other interpretation."

Likewise, I am of the opinion that none of the clauses of the will—following its second one wherein Mrs. Bennett was given the property of the testator "so long as she shall remain a widow, after my death" —"taken together, does not change the import of the isolated devise to the widow," made in the second clause of testator's will, since there is nothing in the other clauses "which tends to establish any other interpretation." Therefore, I am firmly of the opinion that "taking the first (second one in this case) clause of the will by itself and construing it according to the letter, the punctuation, the rules of grammar and of common sense, it should be interpreted * * * as limiting her entire interest to her life or widowhood."

But the majority opinion cites in substantiation of the contrary interpretation (i. e., that the will should be construed as devising to the widow a fee in testator's property subject only to be defeated by her remarriage) these cases: Hinkle v. Hinkle, 168 Ky. 286, 181 S. W. 1116; Riner v. Fallis, 176 Ky. 575, 195 S. W. 1102; Prindible v. Prindible, 186 Ky. 280, 216 S. W. 583; Walton v. Jones, 216 Ky. 289, 287 S. W. 710; and Hutter v. Crawford, 225 Ky. 215, 7 S. W. (2d) 1043. I have carefully examined and read them more than once, and find that only two of them (Hinkle v. Hinkle and Walton v. Jones) have any bearing upon the question for solution. The other three (Riner v. Fallis, Prindible v. Prindible, and Hutter v. Crawford) were instances where the wife was given an undoubted fee-simple title to the property devised her without any qualifying or modifying words whatever attached thereon, but to which was added a defeasance clause in case of remarriage. If the will in the instant case had omitted and failed to attach as qualifying language to the estate given the

wife in the second clause of the instant will, the word "so long as she shall remain a widow, after my death, and until she shall remarry," then this case would be one on all fours with the Hutter, Prindible, and Riner cases, each of which, however, like the other two cited ones, recognize the right of the testator to cut down by subsequent language a larger estate given to the first taker by previous language. That right permits the cutting down of a life estate the same as cutting down a fee-simple estate in the same manner.

It must be admitted, however, that the Hinkle, Walton and Riner cases appear to support the interpretation given by the majority opinion, but I have investigated the question from every angle and have found that those two opinions are, not only in direct conflict with all recognized and authoritative texts upon the question, but likewise in conflict with the decisions of other courts, some of which are cited supra, and also in conflict with the Morgan v. Christian domestic case, supra. Not only so, but that interpretation commits brutal violence, according to my conclusion, to plain and unambiguous language employed by the testator in the instant case and disregards, as I conclude, both logic and common sense in the interpretation of his language and in carrying out his evidence intent and purpose clearly expressed.

It is universally admitted that the cardinal and supreme rule for the interpretation of wills is to ascertain the intention of the testator from the language he employed. His expressed wish as contained in that language, together with necessary inferences to be drawn therefrom, will be adopted as the way and manner that his will should be enforced. All other rules are subservient to that one, and, when the intent can be so gathered, then all other subordinate rules surrender. If testator intended in this case to devise his wife a fee-simple title by the second clause of his will, there would have been no use whatever in his inserting therein the language "so long as she shall remain a widow," etc. That language, according to the majority opinion, was pure surplusage and accomplished no result whatever, in spite of the fact that there is a subordinate rule for the interpretation of wills to the effect that all language should be given *some* import if it is at all reconcilable with other parts of the instrument to be interpreted. It would seem, therefore, that according to the majority

opinion the testator could not—though it was his purpose to do so—have created in his wife a life estate without the use of the precise words "for and during her life." But it is conceded that her widowhood ended with her life, and, as words of measurement of the duration of an estate, logic would require that they be construed as synonymous.

Moreover, the inevitable result of the interpretation given by the trial court to the Bennett will—and which the majority opinion approves—is to divert the property of the testator, in case his widow does not remarry, to her people alone, who would take it, in case of her intestate death, as her collateral kindred, thereby leaving out and excluding altogether the heirs of the husband whose property it was at the time he made his will. There is a presumption in the law that wills should be interpreted—if it may be done without violence to some of its terms—so as to vest the property in the blood relatives of the testator, rather than to divert it upon the happening of a contingency to strangers in blood.

It is my conclusion that the testator had that in mind and that, although he did not by express terms provide for the vesting of the property *after* his wife's death if she remained his widow until then, yet he did so by necessary implication when he provided in the fourth clause of his will the disposition to be made of his property *if* his wife should remarry. That clause served only to cut down the right of the wife to the entire income, and to reduce her right, as given to her by the second clause of the will, to an annuity of $200 per month, with the remainder of the income (following the remarriage of his wife) to be equally divided until her death—and the corpus after her death—between his brothers and sisters, and her brothers and sisters; or the issue of any of them who may have died. It is my interpretation that in drafting his will testator concluded (or was of the impression) that after he made the first provision of what should be done with his property upon the happening of the first contingency affecting his wife's interest (her remarriage) that such provision would apply to the happening of either contingency, whichever one occurred first. Therefore, it was his conception, when he provided for a redisposition of the proceeds of his property upon the occasion of his wife remarrying, that such provision would also attach

to. its. corpus after her death. terminating her life estate, although she may. have never remarried. If that interpretation should be followed, then Mr. Bennett did not. die intestate as to any of his. property and it is my conclusion that the rule requiring an interpretation of no intestacy rather than one that would produce intestacy authorizes the interpretation so advanced by me.

But, if I should be mistaken in that, then we are confronted with the baldfaced common sense proposition that the testator in the second clause of his will gave to his wife nothing more than a life estate in his property. In that event (if the interpretation as to future takers after the widow's death unmarried, hereinbefore advanced, should be rejected) the testator's collateral kindred would inherit his property under the laws of descent and distribution after his widow's death in case she did not remarry. But instead of the property thus going to his blood relatives, the interpretation given by the majority opinion diverts it exclusively to the blood relatives of his wife—by giving her the fee if she does not remarry—and which destroys the plainly just and equitable desire of the testator that, after his wife's interest in his property ceased, by the happening of either of the contingencies designated in his will, then *his* relatives, and her relatives, should become joint owners thereof. But that just, considerate and highly commendable purpose on the part of the testator is: to be disregarded and wholly destroyed, and at the expense of sacrificing reason and logic—as well as fundamental principles of interpretation—as contained in authoritative text writers and all of the opinions of the courts except, perhaps, the two domestic cases supra, of Hinkle v. Hinkle and Walton v. Jones, neither of which refers to the prior Morgan domestic case, nor to the Napier opinion of Judge Robertson, nor do they cite any other domestic case in support of the conclusions adopted.

To my mind the majority opinion gives to the rule —supporting an interpretation that would produce testacy instead of intestacy—more force than should be attributed to it, when to do so is in the face of plainly expressed terms of the will, as well as thwarting the manifest intention of the testator. In this case Mr. Bennett obviously gave to his wife only a life estate by the. second clause of his will, standing alone, and which the

opinion in this case concedes as I construe it. But it is attempted to be shown that he *enlarged* that life estate into a fee by certain provisions that he made in following sections of his will, and but for which his wife would have received, in no event, an estate in his property beyond her widowhood which—unless terminated sooner by her remarriage—would inevitably terminate at her death. In other words, the interpretation given to the will by the majority opinion enlarges the estate given to the wife in its second section, and that interpretation is based almost exclusively on the fact that there is no express limitation over of the property after the wife's death without having remarried. But in looking up the declared law on such a situation I find that the text in 17 R. C. L. 623, sec. 12, says: "Just as the devise of a fee may be reduced to a life estate by subsequent language in a will, so subsequent clauses or words in such instrument may make clear the intention of the testator that a fee was intended to pass by a devise which standing by itself would convey merely a life estate. It would seem, however, that the *failure to make a limitation over* after an express life estate, while a circumstance of some weight, is not in itself sufficient to enlarge the life estate to a fee." (My italics.) Cases cited in note 18 to that text are in complete accord with it and I am convinced that it embodies a sound and logical principle of law.

Finally—I construe the instant will, as if it had been written—"I give, devise and bequeath to my beloved wife all of my property of every kind and character, and wherever situated, so long as she shall remain a widow after my death; but if she should re-marry, then she shall obtain therefrom only $200.00 per month from its income and the balance be distributed equally between her brothers and sisters, and my brothers and sisters, and the same disposition shall be made of the corpus at her death." The useless details attempted to be set forth by the testator in his will do not detract from what should be its correct interpretation as if it were couched in the condensed language in which I have put it. I shall not attempt to lengthen the discussion, although I am convinced that the interpretation I have herein made could be more convincingly established if I should devote more time and space in an effort to do so.

For the reasons stated, I most respectfully dissent.